**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SANDRA MARTIN, individually and on behalf of all others similarly situated, | CIVIL ACTION FILE NO.: |
| Plaintiff, | COMPLAINT - CLASS ACTION |
| v. | JURY DEMAND |
| LM GENERAL INSURANCE COMPANY, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Sandra Martin ("Plaintiff"), individually and on behalf of all others

similarly situated, files this Class Action Complaint against Defendant LM General

Insurance Company ("Liberty Mutual"), and in support thereof states the following:

## NATURE OF THE CASE

1.      This is a class action lawsuit by Plaintiff, individually, and on behalf of

a putative class of Georgia insureds under Liberty Mutual private passenger auto

("PPA") insurance policies, who submitted covered first-party total loss auto claims

but were not paid the full motor vehicle title ad valorem tax ("TAVT") (which

replaced Georgia's mandatory auto sales tax in 2013) and title transfer fees and

1

license plate transfer fees (title and license plate transfer fees are hereafter together "fees") due under the policies.

2.      The material terms of Plaintiff's Liberty Mutual PPA insurance policy (the "Policy") at issue are identical for all putative class members ("Class Members").   The "form" policy providing coverage to Plaintiff and the Class Members is attached hereto as Exhibit A, Declaration Page and Policy.

3.      The Policy and Georgia law require Liberty Mutual to pay "actual cash value" ("ACV") including taxes and license plate and transfer fees on total loss claims.  Ex. A; Ga. Comp. R & Regs. R. 120-2-52-.06.  Liberty Mutual determines ACV based on the cost, less any deductible, to purchase a comparable automobile.

4.      Georgia law expressly requires PPA insurers, like Liberty Mutual, who pay total loss claims in this manner to pay applicable taxes and fees based on the total loss vehicle:

> The insurer may elect to pay a cash equivalent settlement based upon the actual cost less any deductible provided in the policy, to purchase a comparable automobile by the same manufacturer, same model year, with similar body style, similar options, and mileage, **including all applicable taxes, license fees and other fees incident to the transfer of ownership of a comparable automobile.** The amount payable on taxes, license fees, and transfer fees shall be limited to the amount that would have been paid on the totaled, insured vehicle at the time of settlement.

Ga. Comp. R. & Regs. R. 120-2-52-.06 (a) (bold added).

5.     TAVT, title transfer fees, and license plate transfer fees are covered by the Policy and required to be paid under Georgia law because they are mandatory taxes and fees imposed by Georgia law on the replacement of (and transfer of ownership of) any vehicle.

6.     Georgia law sets the specific method to determine TAVT on motor vehicles.  The TAVT at the time of Plaintiff's loss was 7% of the value of the vehicle set by the 2017 Georgia Motor Vehicle Assessment Manual for Title Ad Valorem Tax ("TAVT Manual").  Plaintiff's total loss vehicle was valued at $8,800.00 by the TAVT Manual.  As such, the TAVT due on Plaintiff's claim was $616.00 (.07 x $8,800.00).

7.     The mandatory fees incident to transfer of ownership in Georgia includes a minimum $18.00 title transfer fee and a minimum $5.00 license plate transfer fee.

8.     The total in TAVT and fees due on Plaintiff's total loss claims were thus $639.00 ($616.00 + $18.00 + $5.00).  Liberty Mutual breached the Policy and Georgia law by paying only $458.02 in TAVT and fees on Plaintiff's total loss claim, which damaged Plaintiff by $180.98 (not including interest).

9.     Liberty Mutual's underpayment of TAVT was caused by its failure to follow Georgia law and calculate the TAVT based on the TAVT Manual.  Rather

than determine TAVT based on the TAVT Manual, Liberty Mutual appears to have applied the 7% TAVT rate to the value placed on the total loss vehicle by Liberty Mutual's market valuation vendor.

10.     The material facts in this case are not in dispute.  Plaintiff does not dispute the value of the total loss vehicle as determined by Liberty Mutual (and its vendor) when determining the vehicle value component of total loss claims.  There also does not appear to be a dispute as to whether the Policy and Georgia law require payment of TAVT because Liberty Mutual purported to pay TAVT and fees, albeit an incorrect and insufficient amount.

11.     The only issues before the Court are (1) whether Liberty Mutual was required to pay TAVT based on the TAVT requirements of Georgia law, or whether Liberty Mutual could apply the TAVT rate of 7% to its valuation vendor's determination of vehicle value (which is a method not permitted by Georgia law); and (2) whether Liberty Mutual was required to pay a mandatory $18.00 title transfer fee and $5.00 license plate transfer fee, which are the minimum amounts required by Georgia law for an insured to transfer title and have a license plate on their replacement vehicle.

## THE PARTIES

12.    Plaintiff is and was domiciled in DeKalb County, Georgia, and was a Georgia citizen at all times relevant to this lawsuit.

13.    Defendant Liberty Mutual is a foreign insurance company operating under the "Liberty Mutual" brand whose principal office address is 2815 Forbs Avenue, Suite 200, Hoffman Estates, IL 60192.  Liberty Mutual's registered agent is Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because: (a) Plaintiff is a member of the putative class, which consists of at least 100 members; (b) Plaintiff is a Georgia citizen; (c) Liberty Mutual is an Illinois citizen; and (d) the amount in controversy exceeds the sum of $5 million exclusive of interest and costs.

15.    Venue is proper in this Court because Plaintiff and Liberty Mutual reside in and are subject to personal jurisdiction in this district and division; and a substantial portion of the events giving rise to Plaintiff's claims occurred within this district and division.

## FACTUAL ALLEGATIONS

**I.    During the Period of Plaintiff's Total Loss, Georgia Imposed a Title Ad Valorem Tax for Used Cars Based on the Value Set forth in the Georgia Motor Vehicle Assessment Manual for Title Ad Valorem Tax.**

16.    On March 1, 2013, Georgia eliminated sales tax on motor vehicle purchases and replaced the sales tax with a title ad valorem tax ("TAVT").

> (b)(1)(A) Except as otherwise provided in this subsection, any motor vehicle for which a title is issued in this state on or after March 1, 2013, shall be exempt from sales and use taxes to the extent provided under paragraph (95) of Code Section 48-8-3 and shall not be subject to the ad valorem tax as otherwise required under Chapter 5 of this title. Any such motor vehicle shall be titled as otherwise required under Title 40 but shall be subject to a state title fee and a local title fee which shall be alternative ad valorem taxes as authorized by Article VII, Section I, Paragraph III(b)(3) of the Georgia Constitution.

O.C.G.A. § 48-5C-1(b)(1)(A).

17.    For the period of March 1, 2013 through December 31, 2019, TAVT was determined for vehicles by applying the TAVT percentage rate to the fair market value of the vehicle set as of the day of purchase by the Georgia Motor Vehicle Assessment Manual for Title Ad Valorem Tax.   O.C.G.A. § 48-5C-1(a)(1)(A) (versions for the period 3/1/13 through 12/31/19).

18.    On January 1, 2020, the method of determining TAVT for vehicles purchased from a new or used car dealer other than under a seller financed sales arrangement changed such that the TAVT percentage rate is determined based on

6

"the retail selling price of the motor vehicle, less any reduction for the trade-in value of another motor vehicle."  O.C.G.A. § 48-5C-1(a)(1)(A) (versions for the period 1/1/2020 through present).  The method of determining TAVT for vehicles purchased privately (not from a dealer) or under a seller financed sales arrangement remained the same: based on vehicle value set by the Georgia Motor Vehicle Assessment Manual for Title Ad Valorem Tax. *Id.*

19.    The applicable Georgia Motor Vehicle Assessment Manuals for the class period are available at https://dor.georgia.gov/georgia-motor-vehicle-assessment-manual-title-ad-valorem-tax (last visited Mar. 22, 2021).  The fair market value of the total loss vehicle for purposes of TAVT is not subject to appraisal because it is a set amount determined by the manual that only relates to the TAVT due on the claim.

20.    The specified percentage TAVT to be applied to the assessment value during the class period (defined below) is as follows:

| **Time Period** | **TAVT %** |
|---|---|
| 3/1/2013 – 12/31/2013: | 6.50% |
| 1/1/2014 – 12/31/2014: | 6.75% |
| 1/1/2015 – 12/31/2019: | 7.00% |
| 1/1/2020 – present: | 6.60% |

O.C.G.A. § 48-5C-1(b)(1)(A) (all prior versions).

21.    For Plaintiff and the great majority of Class Members, their total loss vehicles are listed in the TAVT Manuals. The minimum TAVT due on the vehicle is thus easy to identify: (1) find the vehicle value listed in the TAVT Manual; (2) apply the percentage TAVT to the value.

## II.    The Policy Required Liberty Mutual to Pay Actual Cash Value, Including Mandatory Replacement Costs TAVT, Title Transfer Fees, and License Plate Transfer Fees on All Total Loss Claims.

22.    The Policy required Liberty Mutual to pay ACV on first-party total loss claims. Liberty Mutual's Policy with Plaintiff and each Class Member utilizes standardized policy language with identical material terms for collision and comprehensive coverage on first-party total loss physical damage claims. These terms are set forth in the "form" policy attached hereto as Exhibit A.

23.    ACV is not defined in the Policy. ACV reasonably includes those replacement costs that are likely to be incurred on the replacement of the total loss vehicle.

24.    This reasonable interpretation of ACV to include taxes and fees is consistent with the practice by Liberty Mutual in Georgia (and Plaintiff believes, other states) to include taxes and title transfer fees on first-party total loss claims under policies with almost identical material terms as the Policy here.

8

25.     The Policy does not exclude from coverage the mandatory TAVT, title

transfer fee, and/or license plate transfer fee necessary to replace a total loss vehicle.

26.     The Policy provides as follows relating to PPA physical damage

collision coverage:

**INSURING AGREEMENT**

We will pay for direct and accidental loss to **your covered auto** or any
**non-owned auto**, including their equipment, subject to **Customized
Equipment Coverage**, minus any applicable deductible shown in the
Declarations.

Ex. A, at p. A-027 (Automobile Amendatory Endorsement, p. 2 of 4); *see also Id.* at

p. A-014 (Auto Policy, p. 7 of 12) (same material provisions).

27.     The Policy further provides as follows:

**LIMIT OF LIABILITY**

**A.**     At our option, our limit of liability for loss will be the lowest
of:

**1.** The actual cash value of the stolen or damaged property;

**2. a.** The amount necessary to repair or replace the property;
**b.** Determination of the cost of repair or replacement will be
based upon one of the following:
**(1)** the cost of repair or replacement agreed upon by you
and us;
**(2)** a competitive bid approved by us; or
**(3)** an estimate written based upon the prevailing
competitive price. You agree with us that we may
include in the estimate parts furnished by the original
vehicle manufacturer or parts form other sources

including non-original equipment manufacturers. The prevailing competitive price means prices charged by a majority of the repair market in the area where the vehicle is to be repaired as determined by us; or

**3.** The limit of liability shown in the Declarations.

Ex. A, at p. A-022 (Amendment of Policy Provisions – Georgia, p. 3 of 6); *see also Id.* at p. A-016 (Auto Policy, p. 9 of 12) (limit of liability is ACV or amount necessary to repair or replace the property).

28.    The Policy also provides under LIMIT OF LIABILITY:

**B.**    An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss. In this case, the actual cash value consists of the value of the vehicle not including any customized equipment.

**C.**    If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

Ex A. at p. A-029 (Automobile Amendatory Endorsement, p. 4 of 4); *see also, Id.* at p. A-016 (Auto Policy, p. 9 of 12) (substantially similar provisions).

29.    The Policy includes a payment of loss provision as follows:

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

**1.** You; or

**2.** The address shown in this policy.

10

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

**If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.**

*Id*. (emphasis added).

30.    The Policy imposes no condition that an insured replace a total loss vehicle to receive full coverage under the Policy.

31.    The Policy contains no provision setting out a difference in coverage based on whether a total loss vehicle is leased, owned, or financed.

32.    The Policy contains no provision setting out a difference in coverage based on whether a total loss vehicle is replaced after the total loss.

**III.    Georgia Law Required Liberty Mutual to Pay TAVT, Title Transfer Fees, and License Plate Transfer Fees Under the Policies.**

33.    Georgia State Rules and Regulations, Rule 120-2-52-.06, Total Loss Vehicle Claims, is promulgated by the Georgia Commissioner of Insurance pursuant to the authority set forth in O.C.G.A. §§ 33-2-9 and 33-34-8.  Rule 120-2-52-.06 requires that when insurers pay for total losses in money (rather than actually providing a replacement vehicle), the insurers must include in such payments "all applicable taxes, license fees and other fees incident to the transfer of ownership of a comparable automobile. The amount payable on taxes, license fees, and transfer

11

fees shall be limited to the amount that would have been paid on the totaled, insured vehicle at the time of settlement."

34.    TAVT, title transfer fees, and license plate transfer fees are taxes and fees incident to transfer of ownership and should have been paid by Liberty Mutual under the Policies.   The requirements of Georgia law are incorporated into the Policies.

## IV.    TAVT, Title Transfer Fees, and License Plate Transfer Fees are Mandatory Tax and Fees Incident to the Transfer of Ownership, and Payment of TAVT Is Mandated by Georgia Law.

35.    Throughout the class period, Georgia law imposed a mandatory TAVT of between 6.6% and 7% based on the fair market value of the vehicle (determined by the TAVT Manual) on any purchase, transfer, or lease of a private passenger vehicle. O.C.G.A. § 48-5C-1(b)(1)(A).

36.    Throughout the class period, Georgia prohibited the purchase, transfer, or lease of a vehicle without the transfer of title, and the payment of a minimum $18.00 title transfer fee.  O.C.G.A. § 40-3-32(b); O.C.G.A. § 40-3-38(c).

37.    Throughout the class period, Georgia prohibited the purchase, transfer, or lease of a private passenger vehicle without proper registration, and the payment

of a minimum $5.00 license plate transfer fee. O.C.G.A. § 40-2-20(a)(1)(A); O.C.G.A. § 40-2-42(b).

## V.   Liberty Mutual Breached Its Policy with Plaintiff by Failing to Pay Full TAVT due on Plaintiff's Total Loss Claim.

38.   Plaintiff entered into a Georgia PPA policy agreement to be insured by Liberty Mutual under terms contained in the "form" policy attached as Exhibit A.

39.   The Policy provided physical damage coverage for Plaintiff's 2002 Lexus SC 430 ("Plaintiff's Vehicle"). Ex. A at p. A-002 (Declarations, p. 1 of 4).

40.   On or about October 19, 2017, Plaintiff was involved in an auto collision while operating Plaintiff's Vehicle.  Plaintiff filed a claim with Liberty Mutual for Plaintiff's Vehicle's physical damage caused by the collision, claim number PD000-036380336-02. *See* Ex. B, CCC Market Valuation Report at p. B-002; Ex. C, Settlement Explanation at p. C-002.

41.   Liberty Mutual determined that Plaintiff's Vehicle was a total loss and that the claim was a covered claim.

42.   Liberty Mutual, through its vehicle valuation provider, believed to be CCC Information Services Inc., determined Plaintiff's Vehicle had a base value of $6,903.00, with a $617.00 negative condition adjustment for a total adjusted value of $6,286.00. Ex. B at p. B-002.  Plaintiff does not dispute Liberty Mutual's vehicle valuation for purposes of paying the vehicle value component of the total loss claim.

13

43.    Liberty Mutual added $458.02 for "taxes and fees," inclusive, and then subtracted the deductible amount of $1,000.00. Ex. C at p. C-003. Liberty Mutual also deducted $1,333.00 for salvage value because salvage was retained by Plaintiff. *Id.* The amount of the deduction for salvage is not disputed by Plaintiff. Liberty Mutual made a final payment on the claim of $4,411.02. *Id.*

44.    On information and belief, Liberty Mutual determined $458.02 for "taxes and fees" to include $440.02 in tax (7% of the adjusted vehicle value of $6,286.00 = $440.02) and $18.00 as a title transfer fee.

45.    Liberty Mutual breached the Policy by failing to pay the full amount of taxes (the TAVT) and fees owed on Plaintiff's Vehicle. The TAVT on Plaintiff's Vehicle was 7% of the vehicle's value set out in the 2017 TAVT Manual, which valued Plaintiff's Vehicle at $8,800.00 for purposes of calculating TAVT. As such, the TAVT due on Plaintiff's claim was $616.00 (.07 x $8,800.00).

46.    Fees payable under the Policy on Plaintiff's claim also included a mandatory minimum $18.00 title transfer fee and a $5.00 mandatory minimum license plate transfer fee.

47.    The total in taxes and fees owed on Plaintiff's claim thus was $639.00 ($616.00 + $18.00 + $5.00). Liberty Mutual paid only $458.02 in taxes and fees and, thus, underpaid Plaintiff by $180.98.

14

48.    Plaintiff was damaged by Liberty Mutual's breach.

**VI.    Liberty Mutual Breached Its Policies with All Class Members by Failing to Pay the Mandatory Replacement Costs on Their Total Loss Claims.**

49.    Each Class Member was insured by Liberty Mutual for a total loss under the same material terms as the Policy insuring Plaintiff.

50.    Like Plaintiff, each Class Member submitted a claim to Liberty Mutual during the class period, which Liberty Mutual determined was a covered total loss.

51.    Liberty Mutual breached its insurance policy with each Class Member by failing to pay the full TAVT, title transfer fee, and license plate transfer fee owed on the Class Member's total loss claim.

52.    All Class Members satisfied all terms of the Policy and all conditions precedent, such that their insurance policies were in effect and operational at the time of their total loss, and their total loss claims were deemed covered claims by Liberty Mutual.

## CLASS ACTION ALLEGATIONS

53.    Plaintiff brings this lawsuit as a class action under Fed. R. Civ. P. 23(a) and 23(b)(3).

54.    The proposed class (the "Class") is defined as follows:

> All insureds under any Georgia policy issued by Liberty Mutual who, during the time six years before the filing of this lawsuit through the date of a class certification order,

> submitted a covered first-party physical damage claim,
> whose claim was adjusted as a total loss, and who received
> a total loss payment from Liberty Mutual that did not
> include all the TAVT, title transfer fees, and license plate
> transfer fees due under the policy and Georgia law.

55. **Excluded** from the Class are all officers and employees of Liberty Mutual and its affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

56. The amount in controversy exceeds $5 million based on the high amount of PPA premium (over $190 million in 2019) written by Liberty Mutual each year. Based on this high premium written, Plaintiff believes that first-party covered total loss claims in the class period are over 15,000. Plaintiff believes that the average TAVT Manual value of a total loss vehicle in the class is over $7,000.00, which makes the amount in controversy on TAVT alone (not including interest, title transfer fees, and license plate transfer fees) on 15,000 claims over $7.3 million ((15,000 * $7,000.00) * .07)).

### Fed. R. Civ. P. 23(a)

57. **Numerosity.** The number of Class Members are believed to exceed 15,000 and are so numerous and geographically dispersed throughout Georgia that separate joinder of each is impracticable.

58.   **Ascertainability.**   The Class Members are ascertainable and readily identifiable from information and data in Liberty Mutual's possession.

59.   **Commonality.**   Common questions of law and fact, which are susceptible to common answers, predominate over any individualized questions. Such common questions include the following:

a.   Whether the Policy and Georgia law require Liberty Mutual to pay TAVT, title transfer fees, and license plate transfer fees on first-party total loss claims, and how much; and

b.   Whether Liberty Mutual breached the Policy by failing to pay TAVT, title transfer fees, and license plate transfer fees.

60.   **Typicality.**   Plaintiff's claims are typical of the claims of all Class Members, and Plaintiff is not subject to any unique defenses.   Liberty Mutual injured Plaintiff and Class Members through uniform misconduct, and Plaintiff's legal claims arise from the same core practices as each Class Member's claim: Liberty Mutual's failure to pay full TAVT, title transfer fees, and license plate transfer fees on first-party total loss claims under PPA Georgia physical damage policies with the same material total loss coverage provisions.   Plaintiff also suffered the same harm as all Class Members: damages from Liberty Mutual's failure to pay all the TAVT and fees due under the Policies.

61.    **Adequacy.**  Plaintiff is an adequate class representative because her interests do not conflict with Class Members' interests, and she will fairly and adequately protect those interests.  Plaintiff's counsel are experienced in litigating consumer class actions and complex litigation and have specific experience successfully litigating similar disputes as the one presented in this case.

### Fed. R. Civ. P. 23(b)(3)

62.    Plaintiff's claims are maintainable on behalf of the Class pursuant to Fed. R. Civ. P. 23(b)(3).

63.    Questions of law and fact, including the common questions identified above, predominate over any questions affecting only individual Class Members.

64.    A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute. Class Members' individual damages, while meaningful, are too small to prosecute individually. Given the relatively small damages individually suffered, individual Class Members appear to have little interest in controlling the prosecution of this matter in separate actions.  Further, thousands of individual lawsuits seeking relatively small recoveries based on the same legal theories would burden the court system.  A class action presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.  Plaintiff's

counsel are unaware of likely difficulties in managing this class action.

65.    It is desirable to concentrate the litigation of these claims in this forum because this class action involves Georgia claims under Georgia law, the great majority of Class Members reside in Georgia, many Class Members reside in this district and division, and substantial evidence relating to this class action is located in this district and division.

66.    Plaintiff is unaware of other pending litigation on behalf of Class Members involving the Georgia claims against Liberty Mutual that are asserted herein.

## COUNT I
## BREACH OF CONTRACT

67.    The allegations in all prior paragraphs are incorporated here by reference.

68.    Plaintiff and all Class Members were covered insureds under Policies with Liberty Mutual and complied with all Policy terms relating to their total loss claims.

69.    Each Plaintiff and Class Member made a claim under their Policy that Liberty Mutual determined to be a first-party total loss covered claim.

70.    The Policies and Georgia law imposed a duty on Liberty Mutual to pay for all loss, including actual cash value with taxes and fees.

71.    The Policies required Liberty Mutual to pay Plaintiff and all Class Members TAVT, title transfer fees, and license plate transfer fees because they are mandatory taxes and fees on the replacement of a total loss insured vehicle and are incident to the transfer of ownership of an automobile comparable to the total loss vehicle.

72.    Liberty Mutual failed to pay Plaintiff and all Class Members the full TAVT, title transfer fees, and license plate transfer fees due under the Policy.

73.    Liberty Mutual's failure to pay Plaintiff and Class Members all the TAVT, title transfer fees, and license plate transfer fees required by Georgia law breached Liberty Mutual's Policy and Georgia law.

74.    As a result of Liberty Mutual's breaches, Plaintiff and Class Members have suffered damages and are entitled, under their Policy, to sums representing all unpaid TAVT, title transfer fees, and license plate transfer fees, as well as prejudgment and post-judgment interest, attorneys' fees, and all costs and expenses of litigation.

75.    Plaintiff does not dispute the base values determined by Liberty Mutual for total loss vehicles for purposes of identifying the vehicle value component of the total loss claim.  This case only presents a narrow dispute as to insurance coverage: are TAVT, title transfer fees, and license plate transfer fees required to be paid under

the Policies on first-party total loss claims, and if so, how are they required to be calculated.

## **JURY DEMAND**

76.    Plaintiff hereby demands a trial by jury as to all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, seeks judgment as follows:

a)    An order certifying this action as a class action and appointing Plaintiff as class representative and Plaintiff's counsel as Class Counsel;

b)    An award of compensatory damages in amounts owed under the Policies and Georgia law;

c)    An award of other damages according to proof;

d)    An award of costs of suit incurred herein;

e)    An award of prejudgment and post-judgment interest on any amounts awarded;

f)    An award of reasonable attorneys' fees and costs; and

g)    An award of such other relief as this Court deems just and proper.

This 30th day of March 2021,

/s/ Christopher B. Hall
Christopher B. Hall
Georgia Bar No. 318380
Brittany A. Barto
Georgia Bar No. 501673
HALL & LAMPROS, LLP
400 Galleria Parkway, Suite 1150
Atlanta, GA 30339
Telephone: (404) 876-8100
Facsimile: (404) 876-3477
chall@hallandlampros.com

W. Thomas Lacy
Georgia Bar No. 431032
LINDSEY & LACY, PC
200 Westpark Drive, Suite 280
Peachtree City, GA 30269
Telephone: 770-486-8445
Facsimile: 770-486-8889
tlacy@llptc.com

Scott Edelsberg (*pro hac vice* forthcoming)
Christopher Gold (*pro hac vice* forthcoming)
EDELSBERG LAW, PA
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320
Facsimile: (786) 623-0915
scott@edelsberglaw.com
chris@edelsberglaw.com

Andrew J. Shamis
Georgia Bar No. 494196
SHAMIS & GENTILE, P.A.
14 NE 1st Ave., Suite 1205
Miami, FL 33132

Telephone: (305) 479-2299
Facsimile (786) 623-0915
efilings@shamisgentile.com

*Attorneys for Plaintiff*

# Exhibit A

 A-002 Questions about your Policy?
Call 1-706-327-1798 or
1-800-874-2710

Policy Number:
AOS-258-086891-40 7  5

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/claims



⚠ **ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

## Policy Declarations
## Total Annual Premium: $1,783.00

Reason for your new declarations page: Policy Change 01
Please refer to the Change Detail section for more information.
Effective date of this change: 01/03/2017

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

### Insurance Information

| | | |
|---|---|---|
| Named Insured: | Sandra D Martin | |
| Mailing Address: | ███████ | Policy Number: AOS-258-086891-40 7  5 |
| | Decatur GA ██████ | Policy Period: 01/03/2017-01/03/2018 12:01 a.m. standard time at the address of the Named Insured |
| | | Declarations Effective: 01/03/2017 |
| | | Affinity Affiliation: Rutgers University Alumni Association |

### Vehicles Covered by Your Auto Policy

|   | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|------|------|-------|-------------------|
| 1 | 2002 | LEXUS | SC 430 | JTHFN48Y220010544 |

### Driver Information

|   | NAME | STATE | NAME | STATE |
|---|------|-------|------|-------|
| 1 | Sandra D Martin | GA | | |

To ensure proper coverage, please contact us to add drivers not listed above.



Want to Add a Coverage?
Call 1-706-327-1798 or
1-800-874-2710 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

Policy Number:
AOS-258-086891-40 7  5

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/claims



A-003

---

### DISCOUNTS AND BENEFITS SECTION
Your discounts and benefits have been applied to your Total Annual  Policy Premium.

Vehicle Discounts

|  | VEH 1 2002 LEXUS SC 430 |
|---|---|
| Anti-Theft Device Discount | • |
| Vehicle Safety Discount | • |

Policy Discounts

| | | |
|---|---|---|
| • Paperless Policy Discount | • Electronic Funds Transfer Discount | • Newly Retired Discount |
| • Good/Defensive Driver Discount | | |

## Coverage Information

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of
coverage you have purchased for each vehicle. Where no premium is shown, you have not purchased the
indicated coverage for that vehicle.

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE |
|---|---|---|---|
| | | | VEH 1 2002 LEXUS SC 430 |
| A. Liability | | | |
| Bodily Injury | $ $ | 50,000 Each Person 100,000 Each Accident | $313 |
| Property Damage | $ | 50,000 Each Accident | $290 |
| B. Medical Payments | | | |
| | $ | 5,000 Each Person | $51 |
| C. Uninsured Motorists | | | |
| Uninsured Motorists Bodily Injury | $ $ | 50,000 Each Person 100,000 Each Accident | $45 |
| Property Damage | $ | 50,000 Each Accident | |



? Want to add a Coverage?
Call 1-706-327-1798 or
1-800-874-2710 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

A-004

Policy Number:
AOS-258-086891-40 7  5

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/claims

# Coverage Information continued

| COVERAGE | LIMITS | PREMIUM PER VEHICLE |
|---|---|---|
| | | VEH 1 |
| | | 2002 |
| | | LEXUS |
| | | SC 430 |

**C. Uninsured Motorists (continued)**

Property Damage Deductible:

Veh1: $250

**D. Coverage for Damage to Your Auto**

| | | |
|---|---|---|
| Collision | | $771 |
| Actual Cash Value Less Deductible Shown Veh 1 $1000 | | |
| Other Than Collision | | $258 |
| Actual Cash Value Less Deductible Shown Veh 1 $1000 | | |

**Optional Coverages**

| | | |
|---|---|---|
| Towing And Labor Cost Each Disablement Veh 1 $50 | | $10 |
| Transportation Expenses | $30 Per Day $900 Per Accident | $45 |

| | | |
|---|---|---|
| **Annual Premium Per Vehicle:** | | **$1,783** |

**Premium Adjustment from 01/03/2017 to 01/03/2018**

| | | |
|---|---|---|
| | | VEH 1 |
| | | $388CR |

Total Adjustment: $388.00CR

## Total Annual Policy Premium: $1,783.00

**Additional Coverages and Products Available***

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- Multi-Policy Discounts: Having more than one insurance policy with Liberty Mutual can save you time and money. Learn more about how you can bundle your auto, home, renters,  condo, or umbrella insurance.



Want to Add a Coverage?
Call 1-706-327-1798 or
1-800-874-2710 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

Policy Number:
AOS-258-086891-40 7 5

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/claims

## Additional Coverages and Products Available* (continued)

- Deductible Fund™: The last thing you want to think about after an accident is your deductible. We'll lower your collision deductible on every car on your policy by $100 each year you keep the fund.

- Better Car Replacement™: Totaling your car hurts. We'll make it feel a little better. If your car is totaled, we'll give you the money for a car that's one model year newer with 15,000 fewer miles on it.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or  a deductible may apply. For a complete explanation, please consult your agent today.

## Change Detail

Changes made to your policy for:  Policy Change 01

- Increase Other Than Collision Deductible Veh 1
- Change Bodily Injury on Vehicle 1

- Increase Collision Deductible to Vehicle 1
- Change Uninsured Coverage to Vehicle 1

## Policy Forms and Endorsements: The following forms and endorsements are applicable to your policy.

Amendment of Policy Provisions - Georgia
AS3845GA 08 16
Split Uninsured Motorist Limits - Georgia
PP 04 58 10 91
Optional Transportation Expenses Coverage
AS2225 06 05
Towing and Labor Coverage AS2208 03 16

Automobile Amendatory Endorsement  AS3721 08 16

Uninsured Motorist Reduced By Coverage - Georgia
AS3632 08 16
Split Liability Limits PP 03 09 04 86

Automatic Termination Endorsement AS1046 12 89

LibertyGuard Auto Policy Declarations  provided and underwritten by  LM General Insurance Company  (a stock insurance company), Boston, MA.

President

Secretary

This policy, including endorsements listed above,
is countersigned by:

Authorized Representative



# LibertyGuard Auto Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 300 offices throughout the United States. Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NONASSESSABLE**                    Liberty Mutual Insurance Group



**LIBERTYGUARD AUTO POLICY**

**QUICK REFERENCE**

**DECLARATIONS PAGE**

Your Name and Address
Your Auto or Trailer
Policy Period
Coverages and Amounts of Insurance

Beginning
On Page

Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

**PART A - LIABILITY COVERAGE**
Insuring Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
Supplementary Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
Out of State Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
Financial Responsibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

**PART B - MEDICAL PAYMENTS COVERAGE**
Insuring Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

**PART C - UNINSURED MOTORISTS COVERAGE**
Insuring Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**
Insuring Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
Transportation Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
Payment of Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
No Benefit to Bailee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
Other Sources of Recovery . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

**PART E - DUTIES AFTER AN ACCIDENT OR LOSS** . . . . . . . . . . . . .  10
**PART F - GENERAL PROVISIONS**
Bankruptcy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
Changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
Legal Action Against Us . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
Our Right To Recover Payment . . . . . . . . . . . . . . . . . . . . . . . .  11
Policy Period And Territory . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
Transfer Of Your Interest In This Policy . . . . . . . . . . . . . . . . . . .  12
Two Or More Auto Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

**\*MUTUAL POLICY CONDITIONS** . . . . . . . . . . . . . . . . . . . . . . .  12

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

A-008



## AUTO POLICY

### AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

### DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:

  **1.** The "named insured" shown in the Declarations; and

  **2.** The spouse if a resident of the same household.

**B.** "We," "us" and "our" refer to the Company providing this insurance.

**C.** For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

  **1.** Under a written agreement to that person; and

  **2.** For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results.

**E.** "Business" includes trade, profession or occupation.

**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G.** "Occupying" means in, upon, getting in, on, out or off.

**H.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**I.** "Trailer" means a vehicle designed to be pulled by a:

  **1.** Private passenger auto; or

  **2.** Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

**J.** "Your covered auto" means:

  **1.** Any vehicle shown in the Declarations.

  **2.** Any of the following types of vehicles on the date you become the owner:

    a. a private passenger auto; or

    b. a pickup or van that:

      (1) has a Gross Vehicle Weight of less than 10,000 lbs.; and

      (2) is not used for the delivery or transportation of goods and materials unless such use is:

        (a) incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

        (b) for farming or ranching.

This provision (J.2.) applies only if:

  a. you acquire the vehicle during the policy period;

  b. you ask us to insure it within 30 days after you become the owner; and

  c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

  **3.** Any "trailer" you own.

  **4.** Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

    a. breakdown;    d. loss; or
    b. repair;      e. destruction.
    c. servicing;

This provision (J.4.) does not apply to Coverage for Damage to Your Auto.

**Liberty Mutual®**
INSURANCE

## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include pre-judgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

2. Any person using "your covered auto."

3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $50 a day for loss of earnings, but not other income, because of

attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

### EXCLUSIONS

**A.** We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage."

2. For "property damage" to property owned or being transported by that "insured."

3. For "property damage" to property:
   a. rented to;
   b. used by; or
   c. in the care of;
   that "insured."
   This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:
   a. selling;        d. storing; or
   b. repairing;    e. parking;
   c. servicing;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:
   a. you;
   b. any "family member;" or
   c. any partner, agent or employee of you or any "family member."

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in exclusion A.6.
   This exclusion (A.7.) does not apply to

**Liberty Mutual.**
INSURANCE

the maintenance or use of a:

a. Private passenger auto;

b. Pickup or van that:

  (1) You own; or

  (2) You do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

    a. breakdown;    d. loss; or

    b. repair;      e. destruction; or

    c. servicing;

c. "Trailer" used with a vehicle described in a. or b. above.

**8.** Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

**9.** For "bodily injury" or "property damage" for which that "insured:"

a. is an insured under a nuclear energy liability policy; or

b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

a. American Nuclear Insurers;

b. Mutual Atomic Energy Liability Underwriters; or

c. Nuclear Insurance Association of Canada.

**B.** We do not provide Liability Coverage for the ownership, maintenance or use of:

**1.** Any vehicle which:

a. Has fewer than four wheels; or

b. Is designed mainly for use off public roads.

This exclusion (B.1.) does not apply:

a. While such vehicle is being used by an "insured" in a medical emergency; or

b. To any "trailer."

**2.** Any vehicle, other than "your covered auto," which is:

a. owned by you; or

b. furnished or available for your regular use.

**3.** Any vehicle, other than "your covered auto," which is:

a. owned by any "family member;" or

b. furnished or available for the regular use of any "family member."

However, this exclusion (B.3.) does not apply to you while you are maintaining or

"occupying" any vehicle which is:

a. owned by a "family member;" or

b. furnished or available for the regular use of a "family member."

**4.** Any vehicle, located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

**1.** "Insureds;"

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the auto accident.

**B.** We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

**C.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

**1.** Part B or Part C of this policy; or

**2.** Any Underinsured Motorists Coverage provided by this policy.

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

**A.** If the state or province has:

**1.** A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

**2.** A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

**B.** No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

# PART B - MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

**A.** We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"

**1.** Caused by accident; and

**2.** Sustained by an "insured."

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

**B.** "Insured" as used in this Part means:

**1.** You or any "family member:"

a. while "occupying;" or

b. as a pedestrian when struck by;

a motor vehicle designed for use mainly on public roads or a trailer of any type.

**2.** Any other person while "occupying" "your covered auto."

## EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury:"

**1.** Sustained while "occupying" any motorized vehicle having fewer than four wheels.

**2.** Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.

**3.** Sustained while "occupying" any vehicle located for use as a residence or premises.

**4.** Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury."

**5.** Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

a. owned by you; or

b. furnished or available for your regular use.

**6.** Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

a. owned by any "family member;" or

b. furnished or available for the regular use of any "family member."

However, this exclusion (6.) does not apply to you.

**7.** Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so.

**8.** Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

a. private passenger auto;

b. pickup or van that you own; or

c. "trailer" used with a vehicle described in a. or b. above.

**9.** Caused by or as a consequence of:

a. discharge of a nuclear weapon (even if accidental);

b. war (declared or undeclared);

c. civil war;

d. insurrection; or

e. rebellion or revolution.

**10.** From or as a consequence of the following, whether controlled or uncontrolled or however caused:

a. nuclear reaction;

b. radiation; or

c. radioactive contamination.

**11.** Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

a. competing in; or

b. practicing or preparing for;

any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

**1.** "Insureds;"



**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

**1.** Part A or Part C of this policy; or

**2.** Any Underinsured Motorists Coverage provided by this policy.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C - UNINSURED MOTORISTS COVERAGE

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"

**1.** Sustained by an "insured;" and

**2.** Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** "Insured" as used in this Part means:

**1.** You or any "family member."

**2.** Any other person "occupying" "your covered auto."

**3.** Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

**C.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

**1.** To which no bodily injury liability bond or policy applies at the time of the accident.

**2.** To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

**3.** Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

a. you or any "family member;"

b. a vehicle which you or any "family member" are "occupying;" or

c. "your covered auto."

**4.** To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

a. denies coverage; or

b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

**1.** Owned by or furnished or available for the regular use of you or any "family member."

**2.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

**3.** Owned by any governmental unit or agency.

**4.** Operated on rails or crawler treads.

**5.** Designed mainly for use off public roads while not on public roads.

**6.** While located for use as a residence or premises.

**EXCLUSIONS**

**A.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

**1.** By an "insured" while "occupying," or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

**2.** By any "family member" while "occupying," or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

**B.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured:"

**1.** If that "insured" or the legal

representative settles the "bodily injury" claim without our consent.

**2.** While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (B.2.) does not apply to a share-the-expense car pool.

**3.** Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

**C.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

**1.** Workers' compensation law; or

**2.** Disability benefits law.

**D.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

**1.** "Insureds;"

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

**1.** Part A or Part B of this policy; or

**2.** Any Underinsured Motorists Coverage provided by this policy.

**C.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**D.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

**1.** Workers' compensation law; or

**2.** Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage:

**1.** Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest

applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

**2.** Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.

**3.** If the coverage under this policy is provided:

    **a.** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

    **b.** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

**A.** If we and an "insured" do not agree:

**1.** Whether that "insured" is legally entitled to recover damages; or

**2.** As to the amount of damages which are recoverable by that "insured;"

from the owner or operator of an "uninsured motor vehicle," then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**B.** Each party will:

**1.** Pay the expenses it incurs; and

**2.** Bear the expenses of the third arbitrator equally.

**C.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

**1.** Whether the "insured" is legally entitled to recover damages; and

**2.** The amount of damages. This applies only if the amount does not exceed the

A-014

**Liberty Mutual® INSURANCE**

minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

**A.** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision," only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

  **1.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

  **2.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto," we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

**B.** "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision:"

  **1.** Missiles or falling objects;  
  **2.** Fire;  
  **3.** Theft or larceny;  
  **4.** Explosion or earthquake;  
  **5.** Windstorm;  
  **6.** Hail. Water or flood;  
  **7.** Malicious mischief or vandalism  
  **8.** Riot or civil commotion;  
  **9.** Contact with bird or animal; or  
  **10.** Breakage of glass.

If breakage of glass is caused by a "collision," you may elect to have it considered a loss caused by "collision."

**C.** "Non-owned auto" means:

  **1.** Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member;" or

  **2.** Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

    a. breakdown;  
    b. repair;  
    c. servicing;  
    d. loss; or  
    e. destruction.

### TRANSPORTATION EXPENSES

In addition, we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

  **1.** Temporary transportation expenses incurred by you in the event of a loss to "your covered auto." We will pay for such expenses if the loss is caused by:

    a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

    b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

  **2.** Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto." We will pay for loss of use expenses if the loss is caused by:

    a. Other than "collision" only if the Delcarations indicate that Other Than Collision Coverage is provided for any "your covered auto."

    b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto."

If the loss is caused by a total theft of "your covered auto" or a "non-owned auto," we will pay only expenses incurred during the period:

  **1.** Beginning 48 hours after the theft; and

  **2.** Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

If the loss is caused by other than theft of a "your covered auto" or a "non-owned auto," we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto."



## EXCLUSIONS

We will not pay for:

**1.** Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

**2.** Damage due and confined to:

  a. wear and tear;

  b. freezing;

  c. mechanical or electrical breakdown or failure; or

  d. road damage to tires.

This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto."

**3.** Loss due to or as a consequence of:

  a. radioactive contamination;

  b. discharge of any nuclear weapon (even if accidental);

  c. war (declared or undeclared);

  d. civil war;

  e. insurrection; or

  f. rebellion or revolution.

**4.** Loss to:

  a. Any electronic equipment designed for the reproduction of sound, including, but not limited to:

    (1) radios and stereos;

    (2) tape decks; or

    (3) compact disc players;

  b. Any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:

    (1) citizens band radios;

    (2) telephones;

    (3) two-way mobile radios;

    (4) scanning monitor receivers;

    (5) television monitor receivers;

    (6) video cassette recorders;

    (7) audio cassette recorders; or

    (8) personal computers;

  c. tapes, records, discs, or other media used with equipment described in a. or b.; or

  d. any other accessories used with equipment described in a. or b.

This exclusion (4.) does not apply to:

  a. equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:

    (1) The equipment is permanently installed in "your covered auto" or any "non-owned auto;" or

    (2) The equipment is:

      (a) Removable from a housing unit which is permanently installed in the auto;

      (b) Designed to be solely operated by use of the power from the auto's electrical system; and

      (c) In or upon "your covered auto" or any "non-owned auto;"

    at the time of the loss.

  b. any other electronic equipment that is:

    (1) necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

    (2) an integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto" normally used by the manufacturer for installation of a radio.

**5.** A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto."

**6.** Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

  a. acquire during the policy period; and

  b. ask us to insure within 30 days after you become the owner.

**7.** Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

**8.** Loss to:

  a. awnings or cabanas; or

  b. equipment designed to create additional living facilities.

**9.** Loss to equipment designed or used for the detection or location of radar or laser.

**Liberty Mutual.**
INSURANCE

10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

   a. special carpeting and insulation, furniture or bars;

   b. facilities for cooking and sleeping;

   c. height-extending roofs; or

   d. custom murals, paintings or other decals or graphics.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

   a. selling;     d. storing; or

   b. repairing;    e. parking;

   c. servicing;

   vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer."

13. Loss to "your covered auto" or any "non-owned auto," located inside a facility designed for racing, for the purpose of:

   a. competing in; or

   b. practicing or preparing for;

   any prearranged or organized racing or speed contest.

14. Loss to, or loss of use of, a "non-owned auto" rented by:

   a. you; or

   b. any "family member;"

   if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member," pursuant to the provisions of any applicable rental agreement or state law.

**LIMIT OF LIABILITY**

A. Our limit of liability for loss will be the lesser of the:

   1. Actual cash value of the stolen or damaged property;

   2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to any "non-owned auto" which is a trailer is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

   1. You; or

   2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

   1. Any coverage provided by the owner of the "non-owned auto;"

   2. Any other applicable physical damage insurance;

   3. Any other source of recovery applicable to the loss.

**APPRAISAL**

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:



**1.** Pay its chosen appraiser; and

**2.** Bear the expenses of the appraisal and umpire equally.

**B.** We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

**1.** Cooperate with us in the investigation, settlement or defense of any claim or suit.

**2.** Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

**3.** Submit, as often as we reasonably require:
  a. to physical exams by physicians we select. We will pay for these exams.
  b. to examination under oath and subscribe the same.

**4.** Authorize us to obtain:
  a. medical reports; and
  b. other pertinent records.

**5.** Submit a proof of loss when required by us.

**C.** A person seeking Uninsured Motorists Coverage must also:

**1.** Promptly notify the police if a hit-and-run driver is involved.

**2.** Promptly send us copies of the legal papers if a suit is brought.

**D.** A person seeking Coverage for Damage to Your Auto must also:

**1.** Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

**2.** Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

**3.** Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

**A.** This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

**1.** The number, type or use classification of insured vehicles;

**2.** Operators using insured vehicles;

**3.** The place of principal garaging of insured vehicles;

**4.** Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of your policy; or

**2.** An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

**A.** No legal action may be brought against us until there has been full compliance with all

the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

**1.** We agree in writing that the "insured" has an obligation to pay; or

**2.** The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

## OUR RIGHT TO RECOVER PAYMENT

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

**1.** Whatever is necessary to enable us to exercise our rights; and

**2.** Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

**1.** Hold in trust for us the proceeds of the recovery; and

**2.** Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

**A.** This policy applies only to accidents and losses which occur:

**1.** During the policy period as shown in the Declarations; and

**2.** Within the policy territory.

**B.** The policy territory is:

**1.** The United States of America, its territories or possessions;

**2.** Puerto Rico; or

**3.** Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

**A. Cancellation.** This policy may be cancelled during the policy period as follows:

**1.** The named insured shown in the Declarations may cancel by:

a. returning this policy to us; or

b. giving us advance written notice of the date cancellation is to take effect.

**2.** We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

a. at least 10 days notice:

(1) if cancellation is for nonpayment of premium; or

(2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

b. at least 20 days notice in all other cases.

**3.** After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

a. for nonpayment of premium; or

b. if your driver's license or that of:

(1) any driver who lives with you; or

(2) any driver who customarily uses "your covered auto;"

has been suspended or revoked. This must have occurred:

(1) during the policy period; or

(2) since the last anniversary of the original effective date if the policy period is other than 1 year; or

c. if the policy was obtained through material misrepresentation.

**B. Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. If the policy period is:

**1.** Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

**2.** 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

**C. Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto," any similar insurance provided by

**Liberty Mutual.** INSURANCE

this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions.**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto."

**B.** Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

**\*MUTUAL POLICY CONDITIONS**

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

**PRESIDENT**

**SECRETARY**

Includes Copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**AMENDMENT OF POLICY PROVISIONS - GEORGIA**

PERSONAL AUTO
AS 3845GA 08 16

**I.   DEFINITIONS**

The following definitions are added:

**K.** "Personal vehicle sharing program" means a legal entity qualified to do "business" in this state and engaged in the "business" of facilitating the sharing of private passenger motor vehicles for noncommercial use by individuals within this state. Private passenger motor vehicle as it relates to "personal vehicle sharing program" means a four wheel passenger or station wagon type motor vehicle insured under an automobile liability insurance policy covering any individuals residing in your household.

**L.** "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

**II.   PART A - LIABILITY COVERAGE**

**INSURING AGREEMNT**

Item **B.2.** is replaced by the following:

**2.** Any person using "your covered auto" with your express or implied permission. The actual use must be within the scope of that permission.

The following is added to Item **B.**:

However, for the purposes of this coverage, "insured" does not mean any person who is using "your covered auto" under a "personal vehicle sharing program."

**EXCLUSIONS**

Item **A.1.** is replaced by the following:

**A.** We do not provide Liability Coverage for any "insured":

**1.** Who intentionally causes "bodily injury" or "property damage" to the extent that the limits of liability for this coverage exceed the limits of liability required by the Georgia Motor Vehicle Safety Responsibility Act.

Item **A.5.** is replaced by the following:

**5.** For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This includes but

is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (**A.5**) does not apply to a share-the-expense car pool.

The following exclusion is added to item **A.**:

**10.** For "bodily injury" or "property damage" arising out of a criminal act or omission of an "insured." This exclusion applies regardless of whether that "insured" is actually charged with, or convicted of, a crime. However, this exclusion (**10.**) does not apply to traffic violations.

Item **B.4.** is replaced by the following:

**4.** Any vehicle while it is:

**a.** Operating on a surface designed or used for racing, except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

**b.** Participating in a high performance driving or racing instruction course or school; or

**c.** Preparing for, practicing for, used in, or competing in any prearranged or organized:

(1) race activity; or

(2) speed, performance, stunt, or demolition contest or exhibition

The following exclusion is added:

We do not provide Liability Coverage for any "insured" for "bodily injury" to you or any "family member" to the extent that the limits of liability for this coverage exceed the limits of liability required by the Georgia Motor Vehicle Safety Responsibility Act.

**OTHER INSURANCE**

The entire section is replaced by the following:

If there is other applicable liability insurance available any insurance we provide shall be excess over any other applicable liability insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible liability insurance.



**III. PART B - MEDICAL PAYMENTS COVERAGE**

**INSURING AGREEMENT**

Item **A.** is replaced by the following:

**A.** We will pay "usual and customary charges" incurred for necessary medical and funeral services because of "bodily injury":

   **1.** Caused by accident; and

   **2.** Sustained by an "insured."

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

Item **B.2.** is replaced by the following:

**2.** Any other person while occupying your covered auto with your express or implied permission. The actual occupation must be within the scope of that permission.

Item **B.3.** is added as follows:

**3.** Any other person while occupying, as a guest, an automobile not owned by you or a family member, while being operated by you or a family member.

The following is added to Item **B.**:

   However, for the purposes of this coverage, "insured" does not mean any person who is "occupying" or using "your covered auto" under a "personal vehicle sharing program."

The following item is added to the Insuring Agreement:

   "Usual and customary charges" as used in this Part means:

   The lowest of the following:

   **1.** The charge billed by the medical provider for covered treatment;

   **2.** The eightieth percentile charge for that covered treatment in the geozip area where the provider is located, as determined through the use of a FAIRHealth or similar database;

   **3.** The amount authorized by a state mandated fee schedule or by another law or regulation; or

   **4.** The amount authorized by a written PPN or PPO agreement to which the Medical Provider is a party.

   The "insured" shall not be responsible for payment of any reduction applied by us. If a medical provider disputes an amount paid by us, we will be responsible for resolving such disputes.

**EXCLUSIONS**

Item **2.** is replaced by the following:

**2.** Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (**2.**) does not apply to a share-the-expense car pool.

Item **11.** is replaced by the following:

**11.** Sustained while "occupying" any vehicle while it is:

   **a.** operating on a surface designed or used for racing except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

   **b.** participating in a high performance driving or racing instruction course or school; or

   **c.** preparing for, practicing for, used in, or competing in any prearranged or organized:

      (1) race activity; or

      (2) speed, performance, stunt, or demolition contest or exhibition.

The following Exclusion is added:

**12.** Arising out of a criminal act or omission of an "insured." This exclusion applies regardless of whether that "insured" is actually charged with, or convicted of, a crime. However, this exclusion (**12.**) does not apply to traffic violations.

**OTHER INSURANCE**

The entire section is replaced by the following:

   If there is other applicable auto medical payments insurance available any insurance we provide shall be excess over any other applicable auto medical payments insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible auto medical payments insurance.



## IV. PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

Item **A.** of the **Limit of Liability** is replaced by the following:

**A.** At our option, our limit of liability for loss will be the lowest of:

  **1.** The actual cash value of the stolen or damaged property;

  **2. a.** The amount necessary to repair or replace the property;

    **b.** Determination of the cost of repair or replacement will be based upon one of the following:

      **(1)** the cost of repair or replacement agreed upon by you and us;

      **(2)** a competitive bid approved by us; or

      **(3)** an estimate written based upon the prevailing competitive price. You agree with us that we may include in the estimate parts furnished by the original vehicle manufacturer or parts from other sources including non-original equipment manufacturers. The prevailing competitive price means prices charged by a majority of the repair market in the area where the vehicle is to be repaired as determined by us; or

  **3.** The limit of liability shown in the Declarations.

However, the most we will pay for loss to any "non-owned auto" which is a trailer is $500.

The **Other Sources Of Recovery** Provision of Part **D** is replaced by the following:

### OTHER SOURCES OF RECOVERY

**1.** If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion our limit of liability bears to the total of all applicable limits.

**2.** Any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

  **a.** Any coverage provided by the owner of the "non-owned auto";

  **b.** Any other applicable physical damage insurance;

  **c.** Any other source of recovery applicable to the loss.

However, we will provide primary insurance if the vehicle is owned by a person, firm or corporation engaged in the "business" of selling vehicles at retail. This applies only if you or a "family member":

  **a.** Are operating the vehicle; and

  **b.** Are neither the owner of the vehicle nor that person's employee.

## V. PART E - DUTIES AFTER AN ACCIDENT OR LOSS

The following is added to Paragraph **A.** of Part **E**:

The requirement for giving notice of a claim, if not satisfied by the insured within 30 days of the date of the accident, may be satisfied by an injured third party who, as the result of such accident, has a claim against the insured. However, notice of a claim given by an injured third party to an insurer shall be accomplished by mail.

## VI. PART F - GENERAL PROVISIONS

Part F is amended as follows:

**A.** Items **A.** and **B.** of the **CHANGES** provision are replaced by the following:

  **A.** This policy, your Declarations page and endorsements issued by us to this policy contain all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

  **B.** The premium for your policy is based on information we have received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete and you will notify us if it changes. If this information is incorrect, incomplete, or changes, we will adjust your premium during the policy term or take other appropriate action based upon the corrected, completed or changed information. Changes during the policy term that will result in a premium increase or decrease during the policy term include, but are not limited to, changes in:

    **1.** The number, type or use classification of insured vehicles;

    **2.** Operators using insured vehicles, including newly licensed "family member"

**Liberty Mutual.**
**INSURANCE**

drivers and any household members that have licenses.

**3.** The location where your vehicle is principally garaged.

**4.** Customized equipment or parts.

**5.** The persons who regularly operate a covered auto.

You also agree to disclose all licensed drivers residing in your household.

**B.** The following provisions are added:

**DUTY TO REPORT CHANGES**

You must promptly report to us all changes, including additions and deletions, in policy information. Further, you must report to us certain changes no later than 30 days after the change occurs. These are changes to:

**1.** your residence address;

**2.** operators using insured vehicles, including newly licensed "family member" drivers and any household members that have licenses;

**3.** the location where your vehicle is principally garaged;

**4.** the persons who regularly operate a covered auto;

**5.** the driver's license or operator's permit status of you, a relative, or a resident of your household.

**STORAGE COSTS**

If you give us your consent, we may move the damaged property, at our expense, to reduce storage costs during the claims process. If you do not give us your consent, we will pay only the storage costs which would have resulted if we had moved the damaged property.

**PAYMENT OF PREMIUM**

If your initial premium payment is by check, draft or any remittance other than cash, coverage under this policy is conditioned upon the check, draft or remittance being honored upon presentment to the bank or other financial institution. If the check, draft or remittance is not honored upon presentment, this policy may, at our option, be deemed void from its inception. This means that we will not be liable under this policy for any claims or damages which would otherwise be covered if the check, draft or remittance had been honored upon presentment.

**C.** The **Fraud** provision is replaced by the following:

**FRAUD**

This policy was issued in reliance upon the information provided on your application. Any changes we make at your request to this policy after inception will be made in reliance on information you provide. We may void this policy if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made, at the time changes were requested, or any time during the policy period.

We may void this policy or deny coverage for an accident or loss if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

We may void this policy or deny coverage for fraud or material misrepresentation even after the occurrence of an accident or loss. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so requested, you must reimburse us for any payments we may have already made.

**D.** **Legal Action Against Us** is replaced by the following:

**LEGAL ACTION AGAINST US**

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy and the action is started within two years after the date of loss. In addition, under Part A, no legal action may be brought against us until:

**1.** We agree in writing that the "insured" has an obligation to pay; or

**2.** The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

**Liberty Mutual.**
**INSURANCE**

**E.** The following is added to the **Our Right To Recover Payment** Provision:

**OUR RIGHT TO RECOVER PAYMENT**

1. With respect to Uninsured Motorists Coverage, we shall be entitled to a recovery under Paragraph **A.** or **B.** only after the person has been fully compensated for damages.

2. Paragraph **A.** of this provision does not apply to **Part B - Medical Payments Coverage.**

**F.** With respect to **Part B - Medical Payments Coverage,** Paragraph **B.** of the **Our Right To Recover Payment** Provision is replaced by the following:

If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment after that person has been fully compensated for damages. However, any reimbursement due to us shall be reduced by our pro rata share of attorney's fees and expenses of litigation incurred in bringing the claim.

**G.** The **Termination** Provision is replaced by the following:

**TERMINATION**

**Cancellation**

This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:
   **a.** Returning this policy to us; or
   **b.** Giving us or our authorized agent advance written notice of cancellation, stating a future date on which the policy is to be cancelled.

   If only your interest is affected, the effective date of the cancellation shall be either the date we receive your notice or the date specified in the notice, whichever is later. However, if the named insured gives us or our authorized agent advance written notice of cancellation, we may waive the requirement that the notice state the future date of cancellation by confirming the date and time of cancellation in writing to the named insured.

If by statute, regulation or contract the policy may not be cancelled unless notice is given to a government agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to you and any third party as soon as practicable after receiving your request for cancellation. Our notice will state the effective date of the cancellation which shall be the later of the following:

**a.** Ten days from the date of mailing or delivery of our notice; or

**b.** The effective date of cancellation stated in your notice to us.

2. We may cancel by mailing to the named insured shown in the Declarations at the address last known by us:
   **a.** At least 10 days notice:
      **(1)** If cancellation is for nonpayment of premium; or
      **(2)** If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or
   **b.** At least 30 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel:
   a. for nonpayment of premium; or
   b. if your driver's license or that of:
      (1) any driver who lives with you; or
      (2) any driver who customarily uses "your covered auto;"
   Has been suspended or revoked. This must have occurred:
      (1) during the policy period; or
      (2) since the last anniversary of the original effective date if the policy period is other than 1 year; or
   c. For material misrepresentation or fraud by you with respect to any material fact in obtaining, changing, renewing this policy or with submitting any claim.



Our right to cancel this policy is subject to the limitations contained in the applicable Georgia Statutes.

**Nonrenewal**

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address last known by us. Notice will be mailed at least 30 days before the end of the policy period. If the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

Our right to nonrenew this policy is subject to the limitations contained in the applicable Georgia Statutes.

**Automatic Termination**

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**Other Termination Provisions**

1. We may deliver any notice instead of mailing it. A receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

4. If we decide to cancel or nonrenew this policy, we will give the same advance notice of cancellation or nonrenewal to the loss payee or other third party stated in the policy as we give to the named insured shown in the Declarations.

**H.** The following paragraph is added to the **Transfer Of Your Interest In This Policy** Provision:

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

If a named insured shown in the Declarations terminates their marital relationship, we will continue to provide coverage for the former spouse of the named insured. Coverage applies only:

1. If we are notified of the termination of the marital relationship;

2. If the former spouse was a resident of the same household immediately prior to the termination of the marital relationship; and

3. For the lesser of 90 days or until the end of the policy period.

**I.** The following is added to the **Two Or More Auto Policies** Provision:

**TWO OR MORE AUTO POLICIES**

1. This provision does not apply to Uninsured Motorists Coverage.

2. No one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorists Coverage.

**J.** The following provision is added:

**OUR RIGHT TO RECOMPUTE PREMIUM**

We established the premium for this policy based on the statements you made in the application for insurance. We have the right to recompute the premium if we later obtain information which affects the premium we charged.



## AUTOMOBILE AMENDATORY ENDORSEMENT

AS 3721 08 16

### I. DEFINITIONS

The **Definitions** section is revised as follows:

**A.** The definition of **Your Covered Auto** is replaced with the following:

"**Your Covered Auto**" means:

**1.** Any vehicle shown in the Declarations.

**2.** A **newly acquired auto**.

**3.** Any **trailer y**ou own.

**4.** Any auto or **trailer** you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

  **a.** Breakdown;

  **b.** Repair;

  **c.** Servicing;

  **d.** Loss; or

  **e.** Destruction.

This provision (**4.**) does not apply to Coverage For Damage To Your Auto.

**B.** The definition of **Newly Acquired Auto** is added as follows:

"**Newly acquired auto**":

**1. Newly acquired auto** means any of the following types of vehicles you become the owner of during the policy period:

  **a.** A private passenger auto; or

  **b.** A pickup or van, for which no other insurance policy provides coverage, that:

    **(1)** Has a Gross Vehicle Weight of less than 10,000 lbs.; and

    **(2)** Is not used for the delivery or transportation of goods and materials unless such use is:

      **(a)** Incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

      **(b)** For farming or ranching.

For this definition to apply to a **newly acquired auto,** which is in addition to the vehicles listed in the Declarations, we must insure all other vehicles owned by you.

**2.** Coverage for a **newly acquired auto** is provided as described below. If you ask us to insure a **newly acquired auto** after a specified time period described below has elapsed,

any coverage we provide for a **newly acquired auto** will begin at the time you request the coverage.

**a.** For any coverage provided in this policy except Coverage For Damage To Your Auto, a **newly acquired auto** will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.

However, for this coverage to apply to a **newly acquired auto** that is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

If a **newly acquired auto** replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

**b.** Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

  **(1)** 30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.

  **(2)** Five days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the newly acquired auto, a Collision deductible of $500 will apply.

**c.** Other Than Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

  **(1)** 30 days after you become

**Liberty Mutual.**
**INSURANCE**

AS 3721 08 16

the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Five days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the **newly acquired auto,** an Other Than Collision deductible of $500 will apply.

## IV. PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

A. Paragraph **A.** of the **Insuring Agreement** of **Part D** is replaced by the following:

**INSURING AGREEMENT**

A. We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto,** including their equipment, subject to **Customized Equipment Coverage,** minus any applicable deductible shown in the Declarations. If loss to more than one **your covered auto** or **non-owned auto** results from the same collision, only the highest applicable deductible will apply. We will pay for loss to **your covered auto** caused by:

1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto** we will provide the broadest coverage applicable to any **your covered auto** shown in the Declarations.

B. The following **Customized Equipment Coverage** provision is added under **Part D:**

**CUSTOMIZED EQUIPMENT COVERAGE**

A. We will pay up to $500 for theft or damage to **customized equipment** if the loss is caused by:

1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

Payments shall be reduced by the applicable deductible. However, only one deductible will be applied for any one loss. If you or the owner of a **non-owned auto** keeps salvaged material, payments will also be reduced by the salvage value. In no way shall this coverage increase the limit of liability for **your covered auto** or any **non-owned auto.**

B. "Customized equipment" means any parts, equipment and accessories including devices, extensions, furnishings, fixtures, finishings, and other alterations that:

1. are permanently installed or attached by bolts or brackets;

2. are removable from a housing unit that is permanently installed inside the auto;

3. are permanently bonded to the vehicle by an adhesive or welding procedure; or

4. change the appearance or performance of the vehicle including but not limited to any additions or alterations to the chassis engine, exterior or interior of the auto.

This includes but is not limited to ground effects, specialty rims, performance tires, specialty paint or dye, roll bars, running boards, spoilers, special interior or exterior lighting, roof/trunk racks, and high performance engine

Liberty Mutual® INSURANCE

AS 3721 08 16

components. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer are not considered **customized equipment**.

This also includes any electronic equipment that is not necessary for the normal operation of the auto or the monitoring of the auto's operating system that is used solely for the reproduction of recorded material or used for transmitting or receiving audio, visual or data signals. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer or in a location the automobile manufacturer intended for such equipment, are not considered **customized equipment.**

**C.** If you have purchased additional coverage for **customized equipment** we will pay up to the amount of coverage you have purchased in addition to the $500 limit provided by the policy. This additional coverage must be shown in the Declarations.

**D.** The most we will pay for parts, equipment and accessories that are:

**a.** not installed by the auto manufacturer or dealer and

**b.** permanently installed in or upon the auto

is the actual cash value of the vehicle not including such parts, equipment and accessories.

**C.** The **Transportation Expenses** provision of **Part D** is replaced by the following:

**TRANSPORTATION EXPENSES**

In addition, we will pay up to $30 per day to a maximum of 30 days for any temporary transportation expenses incurred by you. This applies in the event of the theft of your covered auto.

We will pay only transportation expenses incurred during the period:

**1.** Beginning 48 hours after the theft; and

**2.** Ending when your covered auto is returned to use or we pay for its loss.

**D.** Exclusion **1.** is replaced by the following:

**1.** Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (**1.**) does not apply to a share-the-expense car pool.

**E.** Exclusion **4.** is replaced by the following:

**4.** We will not pay for loss to equipment that is not permanently installed in or upon **your covered auto** or any **non-owned auto**. This consists of any equipment that is either designed for the reproduction of sound or receives or transmits audio, visual or data signals. This includes but is not limited to:

**a.** radios and stereos;

**b.** tape decks;

**c.** compact disc players and burners;

**d.** digital video disc (DVD) players and burners;

**e.** citizens band radios;

**f.** scanning monitor receivers;

**g.** television monitor receivers;

**h.** global positioning system (GPS) receivers and/or components;

**i.** video cassette players and recorders;

**j.** audio cassette recorders; or

**k.** personal computers, which includes laptops, desktops, and personal digital assistants (PDA) or any other handheld device.

All accessories used with the above or similar equipment are also excluded.

**F.** Exclusion **13.** is replaced by the following:

AS 3721 08 16

13. Loss to "your covered auto" or any "non-owned auto" while it is:
   a. operating on a surface designed or used for racing. This does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event;
   b. participating in a high performance driving or racing instruction course or school; or
   c. preparing for, practicing for, used in, or competing in any prearranged or organized:
      (1) race activity; or
      (2) speed, performance, stunt, or demolition contest or exhibition.

G. Exclusion 15. is added as follows:
   15. We will not pay for loss to **customized equipment** in excess of what is provided under Customized Equipment Coverage unless additional coverage has been purchased by endorsement and is shown in the Declarations.

H. Exclusion 16. is added as follows:
   16. We will not pay for loss to tapes, records, discs or other media used with any sound reproducing or other electronic equipment.

I. Exclusion 17. is added as follows:
   17. Loss to "your covered auto" or any "non-owned auto" which arises out of a criminal act or omission of an "insured." This exclusion applies regardless of whether that "insured" is actually charged with, or convicted of, a crime. However, this exclusion (**17.**) does not apply to traffic violations.

J. Exclusion 18. is added as follows:
   18. Loss to "your covered auto" or "non-owned auto" while being used in a "personal vehicle sharing program."

K. Paragraph B of the **Limit of Liability** provision of **Part D** is added as follows:

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss. In this case, the actual cash value consists of the value of the vehicle not including any **customized equipment.**

V. **PART E - DUTIES AFTER AN ACCIDENT OR LOSS**
   Part E is amended as follows:
   A. Paragraph **B.** of **Part E** is replaced by the following:
   B. A person seeking any coverage must:
      1. Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy.
      2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
      3. Submit, as often as we reasonably require, within 30 days of our request:
         a. To physical and mental exams by physicians we select under terms we require. We will pay for these exams.
         b. To interviews and recorded statements without the need for us to conduct an examination under oath.
         c. To examination under oath and subscribe the same.
      4. Authorize us to obtain, within 30 days of our request:
         a. Medical reports; and
         b. Other pertinent records, including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle.
      5. Submit a proof of loss when required by us within 30 days of our request.

A-030



Liberty Mutual®
INSURANCE

**PERSONAL AUTO**
**PP 04 58 10 91**

## SPLIT UNINSURED MOTORISTS LIMITS - GEORGIA

### SCHEDULE

If no deductible information appears in the Schedule below, the deductible information which is shown in the Declarations applies. Deductible information shown in this Schedule or in the Declarations replaces deductible information shown in the Uninsured Motorists Coverage - Georgia Endorsement Schedule. Any amount payable for damages under this coverage will be in excess of the applicable per accident deductible.

| | Limit of Liability | Per Accident Deductible Applies | |
|---|---|---|---|
| **Bodily Injury Liability** | $ _____ each person | ☐ YES | $ _____ deductible amount |
| | $ _____ each accident | ☐ NO | |
| **Property Damage Liability** | $ _____ each accident | ☐ YES | $ _____ deductible amount |
| | | ☐ NO | |

The first paragraph of the Limit of Liability provision in the Uninsured Motorists Coverage Endorsement is replaced by the following:

**LIMIT OF LIABILITY**

The limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of bodily injury liability shown in the Schedule or in the Declarations for each accident for Uninsured

Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. The limit of Property Damage Liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all "property damage" resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1991 A-030

A-031



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS REDUCED BY COVERAGE - GEORGIA

**PERSONAL AUTO**
**AS 3632 08 16**

### SCHEDULE

Any amount payable for damages under this coverage will be in excess of the applicable per accident deductible.

| Per Accident Deductible Applies |
| --- |
| ☐ **YES**     $_____ **Deductible Amount** |
| ☐ **NO** |

### PART C - UNINSURED MOTORISTS COVERAGE

Part **C** is replaced by the following:

### INSURING AGREEMENT

**A.** We will pay compensatory damages in excess of any applicable deductible shown in the Schedule or in the Declarations for this coverage which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:

**1.** "Bodily injury" sustained by an "insured" and caused by an accident; and

**2.** "Property damage" caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle". We will pay under this coverage only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements. However, if a settlement is made between an "insured" and the insurer of the "uninsured motor vehicle" for an amount that does not exhaust the limits of liability under any applicable liability bonds or policies, we will not pay under this coverage unless we previously consented to such settlement in writing.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** "Insured" as used in this endorsement means:

**1.** You or any "family member".

**2.** Any other person "occupying":

    **a.** "Your covered auto" with your express or implied permission. The actual occupation must be within the scope of that permission; or

    **b.** Any other auto operated by you.

However, for the purposes of this coverage, "insured" does not mean any person who is occupying or using "your covered auto" under a "personal vehicle sharing program."

**3.** Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.** "Property damage" as used in this endorsement means injury to or destruction of:

**1.** "Your covered auto" (including its resulting loss of use).

**2.** Any property owned by a person listed in **1.** or **2.** of the definition of "insured" while contained in "your covered auto".

**D.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

**1.** To which there is neither:

    **a.** Cash or securities on file with the Georgia Director of Public Safety; nor

    **b.** A liability bond or policy;

    applicable at the time of the accident.



2. To which a liability bond or policy applies at the time of the accident but its limit of liability is either:

   a. Less than the sum of the limits of liability applicable to the "insured" for Uninsured Motorists Coverage under this policy and any other policy; or

   b. Reduced by payments to others to an amount which is less than the sum of the limits of liability applicable to the "insured" for Uninsured Motorists Coverage under this policy and any other policy.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" or "property damage" without hitting:

   a. You or any "family member";

   b. A vehicle which you or any "family member" are "occupying"; or

   c. "Your covered auto".

   If there is no physical contact with the hit-and-run vehicle, the facts of the accident must be corroborated by an eyewitness to the accident other than the "insured" making the claim.

4. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished for the regular use of you or any "family member".

2. Operated on rails or crawler treads.

3. Designed mainly for use off public roads while not on public roads.

4. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "property damage" or "bodily injury" sustained by any "insured":

   1. If that "insured" or the legal representative settles the "bodily injury" or "property damage" claim without our consent. However, an "insured" may, without our consent,

release the insurer of the "uninsured motor vehicle" from further obligation to pay damages after accepting from such insurer a settlement which exhausts the limits of liability under any applicable liability bonds or policies.

   2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (**A.2**) does not apply to a share-the-expense car pool.

   3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (**A.3.**) does not apply to a "family member" using "your covered auto" which is owned by you.

   4. If the property is contained in or struck by a motor vehicle (other than "your covered auto") owned by you or any "family member".

   5. While using any vehicle while it is:

      a. operating on a surface designed or used for racing except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

      b. participating in a high performance driving or racing instruction course or school; or

      c. preparing for, practicing for, used in, or competing in any prearranged or organized:

         (1) race activity; or

         (2) speed, performance, stunt, or demolition contest or exhibition.

   6. Arising out of a criminal act or omission of an "insured." This exclusion applies regardless of whether that "insured" is actually charged with, or convicted of, a crime. However, this exclusion (**A.6**) does not apply to traffic violations.

B. This coverage shall not apply directly or indirectly to benefit:

   1. Any insurer or self-insurer under any of the following or similar law:

      a. Workers' compensation law; or

      b. Disability benefits law.

   2. Any insurer of property.

A-033



**C.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

**A.** The limit of "bodily injury" liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of "bodily injury" liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

The limit of "property damage" liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all "property damage" resulting from any one accident.

This is the most we will pay regardless of the number of:

**1.** "Insureds";

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

**B.** The limit of liability shall be reduced by all sums paid because of the "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible.

This includes all sums paid under Part **A** of the policy.

**C.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A** or Part **B** of this policy.

**D.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**E.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any workers' compensation law.

**F.** No payment will be made for loss paid or payable to the "insured" under Part **D** of the policy.

**OTHER INSURANCE**

If there is other applicable similar insurance available under more than one policy or provision of coverage that is similar to the insurance provided under this Part of the policy:

**1.** The following priorities of recovery apply:

| First | The policy affording Uninsured Motorists Coverage to the "insured" as a named insured or family member. |
|---|---|
| Second | The Uninsured Motorists Coverage applicable to the vehicle the "insured" was occupying at the time of the accident. |

**2.** We will pay only for our share of the loss. Our share is the proportion that our limit of liability bears to the total of all limits applicable on the same level of priority.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.



## OPTIONAL TRANSPORTATION EXPENSES COVERAGE                    AS 2225 06 05

The provisions and exclusions that apply to Part D - Coverage for Damage to Your Auto also apply to this endorsement except as changed by this endorsement.

Optional Transportation Expenses Coverage applies only if:

1. The loss is caused by other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto;
2. The loss is caused by **collision** only if the Declarations indicate that Collision Coverage is provided for that auto; and
3. **Your covered auto** or the **non-owned auto** is withdrawn from use for more than 24 hours.  In the event of a total theft, the vehicle must have been reported missing for at least 48 hours.

### OPTIONAL TRANSPORTATION EXPENSES COVERAGE

If:

1. You choose to allow us to make the rental car arrangements with a specific vendor; and

2. You choose to bring the damaged vehicle to a Total Liberty Care (TLC) facility for all repairs.

We will pay, without application of a deductible, temporary transportation expenses incurred by you for renting a substitute auto, as defined by our rental car provider, until the repairs are completed, when there is a loss to **your covered auto** described in the Schedule or in the Declarations for which a specific premium charge indicates that Optional Transportation Expenses Coverage is afforded.

If you require a vehicle which exceeds the optional daily limit shown on the policy Declarations Page, and we make the arrangements, you will only have to pay the difference between the expense of the vehicle you choose and the optional transportation expenses daily limit shown in the policy Declarations Page.

### OR

If you choose to make your own substitute vehicle arrangements, or choose a repair facility other than a Total Liberty Care (TLC) facility, or your vehicle is declared a total loss, the following applies for expenses incurred from companies in the business of renting vehicles:

When there is a loss to a **your covered auto** described in the Schedule or in the Declarations for which a specific premium charge indicates that Optional Transportation Expenses Coverage is afforded, we will pay, without application of deductible, the daily amount shown on the policy Declarations Page to a maximum of 30 days for:

1. Additional transportation expenses incurred by you for renting a substitute auto.

2. Additional transportation expenses incurred by you for renting a substitute auto due to a total loss of **your covered auto.**

3. Loss of use expenses for which you become legally responsible in the event of loss to a **non-owned auto.**

All coverage provided by this endorsement shall only apply once for any single occurrence.  Our payment will be limited to that period of time reasonably required to repair or replace **your covered auto** or the **non-owned auto.**

(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)


Liberty Mutual® INSURANCE

## SPLIT LIABILITY LIMITS                                        PP 03 09 04 86

### SCHEDULE

| Bodily Injury Liability | $ _____ | each person |
|---|---|---|
| | $ _____ | each accident |
| Property Damage Liability | $ _____ | each accident |

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

**LIMIT OF LIABILITY**

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1985

A-036



## TOWING AND LABOR COVERAGE                                    AS 2208 03 16

We will pay for emergency roadside assistance charges incurred each time "your covered auto" or any "non-owned auto" is disabled due to mechanical or electrical breakdown.  This includes:

1. necessary towing charges when you call Liberty Mutual Roadside Assistance and allow us to make arrangements for the tow to the nearest repair facility from the place of disablement;

2. towing charges up to the amount shown on the policy Declarations Page when you either

   a) arrange for the tow; or

   b) request a tow to a repair facility other than the nearest repair facility from the place of disablement; or

3. when a tow is not required, labor charges incurred at the place of disablement, not to exceed the amount shown on the policy Declarations Page.

Coverage is limited to no more than four occurrences per vehicle plus additional four occurrences per policy in a 12 month policy period for coverages **1.**, **2.**, and **3.** above.

The nearest repair facility is determined by Liberty Mutual.

This coverage must be shown in the Declarations for the specific disabled vehicle which has this coverage.

If a "non-owned auto" is disabled, we will provide the coverage listed above only if you have purchased Towing and Labor Coverage for at least one "your covered auto" and it is shown in the Declarations.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

A-036



# AUTOMATIC TERMINATION ENDORSEMENT

**AS 1046** (Ed. 12-89)

The AUTOMATIC TERMINATION Provision in Part F of the policy is replaced with the following:

AUTOMATIC TERMINATION.  If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

B-001

# Exhibit B

 **MARKET VALUATION REPORT**

*Prepared for LM GENERAL INSURANCE COMPANY*

 ## REPORT SUMMARY

### CLAIM INFORMATION

| | |
|---|---|
| Owner | Martin, Sandra |
| | ▮▮▮▮▮▮▮▮ |
| | Decatur, GA ▮▮▮▮ |
| Loss Vehicle | 2002 Lexus SC 430 |
| Loss Incident Date | 10/19/2017 |
| Claim Reported | 10/27/2017 |

 ### INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 86445449 |
| Claim Reference | 036380336-0002 |
| Adjuster | Philip-foster, Judith |
| Appraiser | Mortberg, Jeremy |
| Odometer | 198,211 |
| Last Updated | 10/27/2017 09:47 AM |

### VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 6,903.00** |
| Condition Adjustment | - $ 617.00 |
| **Adjusted Vehicle Value** | **$ 6,286.00** |
| **Value before Deductible** | **$ 6,286.00** |
| Deductible | - $ 1,000.00 |
| **Total** | **$ 5,286.00** |

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

---

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by LM GENERAL INSURANCE COMPANY.

Loss vehicle has 26% greater than average mileage of 156,900.

**BASE VEHICLE VALUE**

This is derived from comparable vehicle(s) available or recently available in the marketplace at the time of valuation, per our valuation methodology descr bed on the next page.

**ADJUSTED VEHICLE VALUE**

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

Valuation Methodology....................2
Vehicle Information.......................3
Vehicle Condition........................6
Comparable Vehicles......................7
Valuation Notes..........................9
Supplemental Information.................10

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-003

**CCC ONE.**  MARKET VALUATION REPORT

Owner: Martin, Sandra
Claim: 036380336-0002

# VALUATION METHODOLOGY

**How was the valuation determined?**



**CLAIM INSPECTION**

LM GENERAL INSURANCE COMPANY has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



**DATABASE REVIEW**

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

**SEARCH FOR COMPARABLES**

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



**CALCULATE BASE VEHICLE VALUE**

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-003

B-004

 **CCC ONE** MARKET VALUATION REPORT | Owner: Martin, Sandra
Claim: 036380336-0002

# 🚌 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | DECATUR, GA ▮▮▮▮▮▮ |
| VIN | JTHFN48Y220010544 |
| Year | 2002 |
| Make | Lexus |
| Model | SC 430 |
| Body Type | Convertible |
| Engine - | |
|     Cylinders | 8 |
|     Displacement | 4.3L |
|     Fuel Type | Gasoline |
|     Carburation | EFI |
| Transmission | Automatic Transmission Overdrive |
| Curb Weight | 3840 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE ALLOWANCES

| | | |
|---|---|---|
| **Odometer** | 198,211 | - 1,557 |
| **Options** | | |
| Rear Spoiler | Reported | + 121 |

Reported* Option(s) added after initial valuation

Allowances are factors influencing the value of the loss vehicle when compared to a typical vehicle. The typical vehicle is a vehicle of the same year, make, and model as the loss vehicle, including average mileage, and all standard and predominant equipment. These allowances are displayed for illustrative purposes only.

The Base Vehicle Value is calculated from the comparable vehicles with adjustments to reflect the loss vehicle configuration

## VEHICLE HISTORY SUMMARY

| | | |
|---|---|---|
| CCC VINguard® | 1 Collision Estimate | 10/22/2010 |
| | 1 Vehicle Market History Information | 08/12/2005 |
| Experian AutoCheck | No Title Problem Found | |
| Insurance Services Organization/ National Insurance Crime Bureau | 13 Records Found | |
| National Highway Traffic Safety Administration | 3 Recalls | |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-004

B-005

 **ONE** | MARKET VALUATION REPORT

Owner: Martin, Sandra
Claim: 036380336-0002

# 🚗 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| Odometer | 198,211 | |
| Transmission | Automatic Transmission | ✓ |
| | Overdrive | ✓ |
| Power | Power Steering | ✓ |
| | Power Brakes | ✓ |
| | Power Windows | ✓ |
| | Power Locks | ✓ |
| | Power Mirrors | ✓ |
| | Power Driver Seat | ✓ |
| | Power Passenger Seat | ✓ |
| | Power Trunk/Gate Release | ✓ |
| Decor/Convenience | Air Conditioning | ✓ |
| | Climate Control | ✓ |
| | Tilt Wheel | ✓ |
| | Cruise Control | ✓ |
| | Rear Defogger | ✓ |
| | Console/Storage | ✓ |
| | Memory Package | ✓ |
| | Navigation System | ✓ |
| | Keyless Entry | ✓ |
| | Telescopic Wheel | ✓ |
| | Wood Interior Trim | ✓ |
| Seating | Bucket Seats | ✓ |
| | Leather Seats | ✓ |
| | Heated Seats | ✓ |
| Radio | AM Radio | ✓ |
| | FM Radio | ✓ |
| | Stereo | ✓ |
| | Search/Seek | ✓ |
| | Steering Wheel Touch Controls | ✓ |
| | Premium Radio | ✓ |
| | CD Changer/Stacker | ✓ |

To the left is the equipment of the loss vehicle that LM GENERAL INSURANCE COMPANY provided to CCC.

✓ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

🔲 **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-005

B-006

 **ONE** MARKET VALUATION REPORT

Owner: Martin, Sandra
Claim: 036380336-0002

# 🚌 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| **Wheels** | Aluminum/Alloy Wheels | ✔ |
| **Roof** | Power Convertible Top | ✔ |
| **Safety/Brakes** | Air Bag (Driver Only) | ✔ |
| | Passenger Air Bag | ✔ |
| | Anti-lock Brakes (4) | ✔ |
| | 4-wheel Disc Brakes | ✔ |
| | Front Side Impact Air Bags | ✔ |
| | Xenon Headlamps | ✔ |
| | Alarm | ✔ |
| | Traction Control | ✔ |
| | Stability Control | ✔ |
| **Exterior/Paint/Glass** | Dual Mirrors | ✔ |
| | Heated Mirrors | ✔ |
| | Fog Lamps | ✔ |
| | Rear Spoiler | 🗐 |
| | Clearcoat Paint | 🗐 |

B-007

 **CCC ONE.** MARKET VALUATION REPORT | Owner: Martin, Sandra
Claim: 036380336-0002

# 🚗 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| **INTERIOR** | | | |
| Seats | MAJOR WEAR | Seats are torn apart. | - $ 193 |
| Carpets | NORMAL WEAR | | $ 0 |
| Dashboard | MAJOR WEAR | Center Console is heavily worn. | - $ 173 |
| Headliner | NORMAL WEAR | | $ 0 |
| **EXTERIOR** | | | |
| Sheet Metal | NORMAL WEAR | | $ 0 |
| Trim | MAJOR WEAR | Rims are heavily curb rashed. | - $ 251 |
| Paint | NORMAL WEAR | | $ 0 |
| Glass | NORMAL WEAR | | $ 0 |
| **MECHANICAL** | | | |
| Engine | NORMAL WEAR | | $ 0 |
| Transmission | NORMAL WEAR | | $ 0 |
| **TIRES** | | | |
| Front Tires | NORMAL WEAR | | $ 0 |
| Rear Tires | NORMAL WEAR | | $ 0 |
| **Total Condition Adjustments** | | | **- $ 617** |

LM GENERAL INSURANCE COMPANY uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines descr be physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Normal Wear condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-007

B-008

 **CCC ONE** MARKET VALUATION REPORT

Owner: Martin, Sandra
Claim: 036380336-0002

# 🔍 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 |
|---|---|---|---|
| Odometer | 198,211 | 99,742 | 128,350 |
| Automatic Transmission | ✔ | ✔ | ✔ |
| Overdrive | ✔ | ✔ | ✔ |
| Power Steering | ✔ | ✔ | ✔ |
| Power Brakes | ✔ | ✔ | ✔ |
| Power Windows | ✔ | ✔ | ✔ |
| Power Locks | ✔ | ✔ | ✔ |
| Power Mirrors | ✔ | ✔ | ✔ |
| Power Driver Seat | ✔ | ✔ | ✔ |
| Power Passenger Seat | ✔ | ✔ | ✔ |
| Power Trunk/Gate Release | ✔ | ✔ | ✔ |
| Air Conditioning | ✔ | ✔ | ✔ |
| Climate Control | ✔ | ✔ | ✔ |
| Tilt Wheel | ✔ | ✔ | ✔ |
| Cruise Control | ✔ | ✔ | ✔ |
| Rear Defogger | ✔ | ✔ | ✔ |
| Intermittent Wipers | ✘ | ✘ | ✔ |
| Console/Storage | ✔ | ✔ | ✔ |
| Memory Package | ✔ | ✔ | ✔ |
| Navigation System | ✔ | ✔ | ✔ |
| Keyless Entry | ✔ | ✔ | ✔ |
| Telescopic Wheel | ✔ | ✔ | ✔ |
| Wood Interior Trim | ✔ | ✔ | ✔ |
| Bucket Seats | ✔ | ✔ | ✔ |
| Leather Seats | ✔ | ✔ | ✔ |
| Heated Seats | ✔ | ✔ | ✔ |
| AM Radio | ✔ | ✔ | ✔ |
| FM Radio | ✔ | ✔ | ✔ |
| Stereo | ✔ | ✔ | ✔ |
| Search/Seek | ✔ | ✔ | ✔ |
| Steering Wheel Touch Controls | ✔ | ✔ | ✔ |
| Premium Radio | ✔ | ✔ | ✔ |
| CD Changer/Stacker | ✔ | ✔ | ✔ |
| Aluminum/Alloy Wheels | ✔ | ✔ | ✔ |
| Power Convertible Top | ✔ | ✔ | ✔ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ |
| Passenger Air Bag | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ |
| Front Side Impact Air Bags | ✔ | ✔ | ✔ |

**Comp 1**    Updated Date: 10/15/2017
**2002 Lexus Sc 430 8 4.3l Gasoline Efi**
**VIN** JTHFN48Y320023075
**Dealership** Car Guys Inc
**Telephone** (678) 932-2932
**Source** Autotrader
**Stock #** 5045
**Distance from Decatur, GA**
23 Miles - Marietta, GA

**Comp 2**    Updated Date: 10/10/2017
**2002 Lexus Sc 430 8 4.3l Gasoline Efi**
**VIN** JTHFN48Y120023866
**Dealership** Lenn Costner Auto Sales
**Telephone** (256) 820-7500
**Source** Autotrader
**Stock #** D55899
**Distance from Decatur, GA**
94 Miles - Alexandria, AL

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

¹The **Condition Adjustment** sets that comparable vehicle to Normal Wear condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-009

 **ONE** MARKET VALUATION REPORT | Owner: Martin, Sandra
Claim: 036380336-0002

# 🔍 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 |
|---|---|---|---|
| Xenon Headlamps | ✔ | ✔ | ✔ |
| Alarm | ✔ | ✔ | ✔ |
| Traction Control | ✔ | ✔ | ✔ |
| Stability Control | ✔ | ✔ | ✔ |
| Dual Mirrors | ✔ | ✔ | ✔ |
| Heated Mirrors | ✔ | ✔ | ✔ |
| Fog Lamps | ✔ | ✔ | ✔ |
| Rear Spoiler | ✔ | ✘ | ✘ |
| Clearcoat Paint | ✔ | ✘ | ✘ |
| | | | |
| **List Price** | | $ 13,350 | $ 9,995 |
| **Adjustments:** | | | |
| Options | | + $ 121 | + $ 121 |
| Mileage | | - $ 4,386 | - $ 3,069 |
| Condition¹ | | - $ 1,284 | - $ 1,284 |
| **Adjusted Comparable Value** | | **$ 7,801** | **$ 5,763** |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-009

B-010

 MARKET VALUATION REPORT

Owner: Martin, Sandra
Claim: 036380336-0002

# VALUATION NOTES

10/27/2017 09:47 - TAX DISTRICT N

This Market Valuation Report has been prepared exclusively for use by LM GENERAL INSURANCE COMPANY, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value include Georgia Administrative Code 120-2-52-.06.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-010

B-011

 **MARKET VALUATION REPORT**

# SUPPLEMENTAL INFORMATION

## VEHICLE HISTORY INFORMATION

**VINguard®**

VINguard® Message: VINguard has decoded this VIN without any errors

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-011

B-012

CCC ONE. MARKET VALUATION REPORT

Owner: Martin, Sandra
Claim: 036380336-0002

# SUPPLEMENTAL INFORMATION

## VEHICLE HISTORY INFORMATION

**ISO Vehicle History:**

| | |
|---|---|
| **Number of times reported to ISO:** | 13 |
| **ISO's file number:** | H0264316188 |
| Loss date: | 08/14/2017 |
| Phone: | 00000000000 |
| Claim ref: | 036020173-0002 |
| Mileage: | 0000000 |
| ISO notified: | 08/25/2017 |
| Loss date: | 08/31/2010 |
| Claim ref: | 0157054300101142-02 |
| Mileage: | 0119197 |
| ISO notified: | 10/22/2010 |
| Loss date: | 07/24/2016 |
| Phone: | 00000000000 |
| Claim ref: | 034116910-0003 |
| Mileage: | 0000000 |
| ISO notified: | 09/26/2016 |
| Loss date: | 10/25/2016 |
| Phone: | 00000000000 |
| Claim ref: | 034553026-0001 |
| Point of Impact: | Right Front |
| Mileage: | 0000000 |
| ISO notified: | 10/28/2016 |
| Loss date: | 10/19/2017 |
| Phone: | 9547712155 |
| Claim ref: | 036380336 |
| Loss date: | 12/14/2012 |
| Phone: | 4073331090 |
| Claim ref: | 025563348 |
| Loss date: | 09/02/2009 |
| Phone: | 8008463965 |
| Claim ref: | 12199721 |
| Loss date: | 10/25/2016 |
| Phone: | 4073331090 |
| Claim ref: | 034553026 |
| Loss date: | 09/02/2009 |
| Phone: | 8669136866 |
| Claim ref: | 1000003423EXP1 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-012

B-013

 **MARKET VALUATION REPORT** | Owner: Martin, Sandra
Claim: 036380336-0002

# SUPPLEMENTAL INFORMATION

## VEHICLE HISTORY INFORMATION

### Collision History Information:

COLLISION INCIDENT REPORTED BY GEICO ON 10/22/2010

Claim #: 0157054300101142-02 in LITHONIA, GA

Repair Estimate: 917.39               Miles: 119197

Damage Location:    RIGHT FRONT PILLAR (RIGHT SIDE)

RIGHT REAR

### Vehicle Market History Information:

This vehicle was reported to CCC on 08/12/2005      Mileage: 47163

Location: CCC Inspected in GLEN COVE, NY

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-013

B-014

 CCC ONE  MARKET VALUATION REPORT | Owner: Martin, Sandra
Claim: 036380336-0002

# SUPPLEMENTAL INFORMATION

## EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT

| TITLE CHECK | | RESULTS FOUND |
|---|---|---|
| Abandoned | ✓ | No Abandoned Record Found |
| Damaged | ✓ | No Damaged Record Found |
| Fire Damage | ✓ | No Fire Damage Record Found |
| Grey Market | ✓ | No Grey Market Record Found |
| Hail Damage | ✓ | No Hail Damage Record Found |
| Insurance Loss | ✓ | No Insurance Loss Record Found |
| Junk | ✓ | No Junk Record Found |
| Rebuilt | ✓ | No Rebuilt Record Found |
| Salvage | ✓ | No Salvage Record Found |

| EVENT CHECK | | RESULTS FOUND |
|---|---|---|
| NHTSA Crash Test Vehicle | ✓ | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✓ | No Frame Damage Record Found |
| Major Damage Incident | ✓ | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✓ | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✓ | No Odometer Problem Record Found |
| Recycled | ✓ | No Recycled Record Found |
| Water Damage | ✓ | No Water Damage Record Found |
| Salvage Auction | ✓ | No Salvage Auction Record Found |

| VEHICLE INFORMATION | | RESULTS FOUND |
|---|---|---|
| Accident | 🔲 | Accident Record Found |
| Corrected Title | ✓ | No Corrected Title Record Found |
| Driver Education | ✓ | No Driver Education Record Found |
| Fire Damage Incident | ✓ | No Fire Damage Incident Record Found |
| Lease | ✓ | No Lease Record Found |
| Lien | ✓ | No Lien Record Found |
| Livery Use | ✓ | No Livery Use Record Found |
| Government Use | ✓ | No Government Use Record Found |
| Police Use | ✓ | No Police Use Record Found |
| Fleet | ✓ | No Fleet Record Found |
| Rental | ✓ | No Rental Record Found |
| Fleet and/or Rental | ✓ | No Fleet and/or Rental Record Found |
| Repossessed | ✓ | No Repossessed Record Found |
| Taxi use | ✓ | No Taxi use Record Found |
| Theft | ✓ | No Theft Record Found |
| Fleet and/or Lease | ✓ | No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✓ | No Emissions Safety Inspection Record Found |
| Duplicate Title | ✓ | No Duplicate Title Record Found |

CCC provides LM GENERAL INSURANCE COMPANY information reported by Experian regarding the **2002 Lexus SC 430 (JTHFN48Y220010544)**. This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**
✓ No Event Found
⛔ Event Found
🔲 Information Needed

**TITLE CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

**EVENT CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**VEHICLE INFORMATION**
INFORMATION FOUND

AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle

**ODOMETER CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-014

B-015

 **CCC ONE.** MARKET VALUATION REPORT | Owner: Martin, Sandra
Claim: 036380336-0002

# SUPPLEMENTAL INFORMATION

## 📖 FULL HISTORY REPORT RUN DATE: 10/27/2017

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 07/31/2001 | NY | | Independent Source | VEHICLE MANUFACTURED AND SHIPPED TO DEALER |
| 08/17/2001 | MANHASSET, NY | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 10/12/2001 | NY | 15 | Motor Vehicle Dept. | TITLE |
| 02/10/2003 | MANHASSET, NY | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/21/2005 | MANHASSET, NY | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/20/2005 | WACO, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/08/2005 | EASTERN REGION, | 49754 | Auto Auction | REPORTED AT AUTO AUCTION |
| 02/08/2006 | GA | 49850 | Auto Auction | REPORTED AT AUTO AUCTION |
| 03/22/2006 | WACO, GA | 49887 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 07/11/2006 | WACO, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/20/2006 | GA | | State Agency | FRONT IMPACT WITH AN OBJECT |
| 09/20/2006 | GA | | State Agency | SLIGHT DAMAGE REPORTED |
| 07/03/2007 | DECATUR, GA | 91018 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 07/03/2007 | DECATUR, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/03/2007 | DECATUR, GA | 91524 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 10/29/2007 | DECATUR, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 08/18/2009 | COVINGTON, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/02/2009 | GA | | State Agency | LEFT SIDE IMPACT WITH ANOTHER VEHICLE |
| 09/02/2009 | DECATUR, GA | | Police Report | ACCIDENT REPORTED |
| 09/02/2009 | GA | | State Agency | MODERATE DAMAGE REPORTED |
| 11/06/2009 | COVINGTON, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-016

# CCC ONE. MARKET VALUATION REPORT

Owner: Martin, Sandra
Claim: 036380336-0002

# SUPPLEMENTAL INFORMATION

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 10/13/2010 | COVINGTON, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 10/04/2011 | COVINGTON, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 10/09/2012 | COVINGTON, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 10/30/2013 | COVINGTON, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 01/10/2014 | GA | | State Agency | FRONT IMPACT REPORTED |
| 01/10/2014 | GA | | State Agency | MODERATE DAMAGE REPORTED |
| 11/07/2014 | COVINGTON, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 11/27/2015 | COVINGTON, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/24/2016 | GA | | State Agency | RIGHT SIDE IMPACT REPORTED |
| 07/24/2016 | GA | | Police Report | ACCIDENT REPORTED |
| 11/10/2016 | COVINGTON, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 08/14/2017 | GA | | State Agency | LEFT SIDE IMPACT REPORTED |
| 08/14/2017 | GA | | State Agency | MODERATE DAMAGE REPORTED |
| 10/18/2017 | COVINGTON, GA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 10/19/2017 | GA | | State Agency | FRONT IMPACT REPORTED |
| 10/19/2017 | GA | | State Agency | SEVERE DAMAGE REPORTED |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-016

CCC ONE.  MARKET VALUATION REPORT | Owner: Martin, Sandra
Claim: 036380336-0002

# SUPPLEMENTAL INFORMATION

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond  he reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to  he personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-018

**CCC ONE** | MARKET VALUATION REPORT | Owner: Martin, Sandra
Claim: 036380336-0002

# SUPPLEMENTAL INFORMATION

 **NHTSA VEHICLE RECALL**

**NHTSA Campaign ID :** 13V133000

**Mfg's Report Date :** APR 11, 2013

**Component :** AIR BAGS

**Potential Number Of Units Affected :** 844,277

**Summary :** Toyota is recalling certain model year 2002 through 2004 Toyota Corolla, Corolla Matrix, Sequoia, Tundra, Lexus SC, and Pontiac Vibe vehicles to address a safety defect in the passenger side frontal air bag which may produce excessive internal pressure causing the inflator to rupture upon deployment of the air bag. This recall addresses both the passenger side frontal air bags that were originally installed in the vehicles, as well as replacement air bags that may have been installed as replacement service parts. A replacement air bag may have been installed, as one example, if a vehicle had been in a crash necessitating the replacement of the passenger side frontal air bag.

**Consequence :** In the event of a crash necessitating deployment of the passenger's frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the passenger seat occupant or other occupants.

**Remedy :** Toyota will notify owners of affected Toyota and Lexus vehicles and General Motors will notify owners of affected Pontiac Vibe vehicles. Toyota, Lexus, and GM dealers will inspect vehicles, and where a defective air bag inflator is identified, the inflator will be replaced, free of charge. The manufacturer has not yet provided the agency with a notification schedule. Toyota and Lexus owners may contact Toyota at 1-800-331-4331. Pontiac Vibe owners may contact GM at 1-800-521-7300.

**Notes :** Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.

---

**NHTSA Campaign ID :** 14V312000

**Mfg's Report Date :** JUN 11, 2014

**Summary :** Toyota Motor Engineering and Manufacturing (Toyota) is recalling certain model year 2002-2004 Toyota Sequoia and Lexus SC and 2003-2004 Toyota Corolla, Corolla Matrix, Tundra, and Pontiac Vibe vehicles to address a safety defect in the passenger side frontal air bag inflator which may produce excessive internal pressure causing the inflator to rupture upon deployment of the air bag. This recall addresses both the passenger side frontal air bags that were originally installed in the vehicles, as well as replacement air bags that may have been installed as replacement service parts. A replacement air bag may have been installed, as one example, if a vehicle had been in a crash necessitating the replacement of the passenger side frontal air bag.

**Consequence :** In the event of a crash necessitating deployment of the front passenger's frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the passenger seat occupant or other occupants.

The National Highway Traffic Safety Administration has issued 3 safety related recall notices that may apply to the above valued vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

B-018

B-019

**CCC ONE** MARKET VALUATION REPORT

Owner: Martin, Sandra
Claim: 036380336-0002

# SUPPLEMENTAL INFORMATION

**Remedy :** Toyota will notify owners of affected Toyota and Lexus vehicles and General Motors will notify owners of affected Pontiac Vibe vehicles. Toyota, Lexus, and GM dealers will replace the passenger side air bag inflator, free of charge. The manufacturer has not yet provided a notification schedule. Owners may contact Toyota customer service at 1-800-331-4331. Pontiac Vibe owners may contact GM at 1-800-521-7300. IMPORTANT NOTE: This recall supersedes recall 13V-133 in which some vehicles were inspected and received a replacement inflator, while others were inspected but did not have their inflator replaced. All owners of vehicles that did not get an inflator replacement, or owners that do not know if they got an inflator replacement, should contact their Toyota or Lexus dealer.

---

**NHTSA Campaign ID :** 14V655000

**Mfg's Report Date :** OCT 20, 2014

**Potential Number Of Units Affected :** 247,000

**Summary :** Toyota Motor Engineering and Manufacturing (Toyota) is recalling certain model year 2002-2005 Lexus SC and Toyota Sequoia and 2003-2005 Toyota Tundra, Corolla, Corolla Matrix and Pontiac Vibe vehicles that were originally sold, or are currently registered, in high absolute humidity areas of southern Florida, along the Gulf Coast, Puerto Rico, Hawaii, the U.S. Virgin Islands, Guam, Saipan and American Samoa. The inflators in the front passenger air bags are susceptible to rupture in the event of a crash necessitating the deployment of the front passenger air bag.

**Remedy :** Toyota will notify owners of affected Toyota and Lexus vehicles and General Motors will notify owners of affected Pontiac Vibe vehicles. Toyota, Lexus, and GM dealers will replace the passenger side air bag inflator, free of charge. If a replacement inflator is not available, as an interim measure, the dealer will disable the front passenger air bag and advise the customer not to use the front passenger seat until a replacement inflator is installed. Toyota will begin its owner notification and remedy of the affected Toyota and Lexus vehicles on or around October 25, 2014. Details on GM's notification and remedy schedule are pending. Owners may contact Toyota customer service at 1-800-331-4331. Pontiac Vibe owners may contact GM at 1-800-521-7300.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# Exhibit C

C-002

**Liberty Mutual.**
INSURANCE

## CONTACT US

**By Phone**
Direct:    (407) 430-4706
Toll Free: (800) 637-0757
Ext.       74395
Fax:       (877) 202-4607

**By E-mail**
judith.foster@
libertymutual.com

**LM General Insurance Company**
P.O. Box 515097
Los Angeles, CA 90051-5097

**Visit us online**
LibertyMutual.com

**About Claims Process**
Libertymutual.com/claims-
insurance/about-claims-process

**Mobile**
Scan QR Code with your
iPhone or Android
smartphone to download
the claims app or download
a free reader app at
www.i-nigma.mobi



November 03, 2017

Sandra D. Martin
███████████████
Decatur GA ██████████

Policy Number:        AOS-258-086891-40
Claim Number:        PD000-036380336-02
Date of Loss:          10/19/2017
Year: 2002   Make: Lexs   Model: Sc 430
VIN #: JTHFN48Y220010544

Dear Sandra Martin,

At Liberty Mutual Insurance, we're here when you need us most and
strive to make your claims experience as simple and easy as possible.

Based on our investigation and the information you have provided,
your vehicle is considered a total loss.

Your settlement is based on the actual cash value of your
vehicle. Following state regulations, this is determined by assessing
your vehicle's market value adjusting for options, mileage, and
pre-accident condition.

Below is a summary of your settlement :

C-002

C-003



Owner Retained

| | |
|---|---|
| Actual cash value: | $6,286.00 |
| Applicable taxes and fees: | $458.02 |
| Minus your deductible: | $1000.00 |
| Minus the salvage value: | $1333.00 |
| Vehicle owner payment: | $4411.02 |
| Total amount we owe: | $4411.02 |

Please refer to the instructions in the initial letter you received to complete the required paperwork.

Our processing center will review your paperwork for accuracy when it is received. This is typically completed within one (1) business day. I will then follow up with you to discuss payment.

If you have any questions, please contact me utilizing the contact information provided.

Thank you for being a Liberty Mutual Insurance customer. We appreciate your business.


Sincerely,
Judith Philp-Foster
Claims Department


Enclosure